JOHN PUSHKO, PETITIONER-APPELLANT, v. BOARD OF
TRUSTEES OF THE TEACHERS' PENSION AND
ANNUITY FUND, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Decided February 6, 1986.

Before Judges PRESSLER, BRODY and COHEN.

*Fred J. Klein,* attorney for appellant (*Fred J. Klein* and *John J. Sharkey, Jr.,* on the supplemental letter brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Ellis I. Medoway,* Deputy Attorney General, on the supplemental letter brief).

PER CURIAM.

Following our decision in this matter, reported at 202 *N.J.Super.* 98 (App.Div.1985), the Supreme Court filed its opinion in *Kane v. Board of Trustees, Police & Firemen's Ret.,* 100 *N.J.* 651 (1985), and remanded this case to us for reconsideration in the light of *Kane.*

We detailed the facts in our earlier opinion. It suffices now to say that petitioner John Pushko, while employed as a physical education teacher, suffered a psychiatric breakdown which totally disabled him from continuing in his profession. The administrative law judge had found that the disability was the cumulative result of three traumatic episodes. The first occurred in October 1977 when petitioner was brutally assaulted by a student who hit him across the mouth and then struck him over the head with a cane. The second occurred in December 1980 when petitioner was punched in the chest by a student

who was assaulting two other students. When petitioner attempted to assist the two boys, the aggressor not only struck him but threatened to get a gun and kill him. The third occurred in February 1981 when petitioner, walking into a generally unused hallway, came upon a group of about ten students who were egging on two boys engaged in a fistfight. Petitioner broke up the fight by pushing one of the boys up against the wall and, without being aware of what he was doing, started to choke him. Another teacher, who came upon the scene, separated petitioner from the boy.

The Board of Trustees of the Teachers' Pension and Annuity Fund rejected the administrative law judge's findings in part. Agreeing that all three incidents had combined to produce the psychiatric disability, it nevertheless concluded that neither a separable component of the second episode nor the entire third episode had satisfied the statutory requirement of a traumatic event. Holding that the Board had erred in its application of the traumatic-event element of the statute, we reversed its consequent denial of the petition. Thereafter, *Kane* was decided, the matter remanded to us, and we afforded the parties an opportunity to file supplemental briefs.

The problems we were faced with in our initial consideration of this case were the result of the psychiatric rather than physical nature of the disability and the psychic rather than physical nature of the third traumatic event, which was deemed a contributing cause of the disability. We noted that in *Cattani v. Bd. of Trustees, Police & Firemen's Retire. Sys.*, 69 *N.J.* 578, 586 (1976), the Supreme Court had defined "traumatic event" as a "mishap or accident involving the application of external force to the body or the violent exposure of the body to some external force." Concluding that the statute encompassed psychiatric disability caused by a psychic trauma and recognizing that *Cattani* addressed only a physical injury caused by a physical trauma, we held that a psychiatric disability was accidental within the intendment of the statute "if the object of the force or violence is understood to be the mind

rather than the body" and the nature of the force or violence is "an external force or series of events [which] impinges on the mind and emotions, as distinguished from the physical body." 202 *N.J.Super.* at 105. We therefore concluded that each of the three events here met the *Cattani* test, although only the first two involved application of physical force or violence to the body. The question before us now is whether they also meet the *Kane* redefinition of the test.

*Kane* prescribes three prerequisite conditions for characterizing an event as traumatic. First, the injury must not have been "induced by the stress or strain of the normal work effort." Second, the employee must have "met involuntarily with the object or matter that was the source of the harm." Third, "the source of the injury itself" must have been "a great rush of force or uncontrollable power." 100 *N.J.* at 663. As we understand the present position of the Board, it concedes that the first two events, the 1977 and the 1980 assaults, qualify as traumatic within the *Kane* prescription. Its argument is that the third event does not, and since all three causative events were therefore not traumatic, the disability cannot be classified as accidental. It is therefore only the nature of the third event which we here consider.

The ordinary metaphysical and quantum-mechanical difficulties inherent in the application of this three-pronged standard are obviously compounded when the injuries are, as here, psychic rather than physical and are caused by an accumulation of episodes rather than by a single episode. The analytical task is daunting. Having undertaken it, we have concluded that additional factual determinations must be made in order to apply the *Kane* redefinition to the third event.

In considering each of the prongs of *Kane* as applied to the third event, we are satisfied that the test of the first prong is met since we cannot regard the incident as falling into the disqualifying category of a stress or strain of the normal work effort. While we appreciate that many urban schools have

disciplinary problems and that some of these problems are severe, we cannot conclude that having to break up fistfights in a school corridor and then suffering the physical or emotional sequelae thereof are part of the "stress or strain of the normal work effort" of a teacher. It may be part of the stress or strain of the normal work effort of a policeman or a security guard, but we do not regard the hazards of combat as part of the normal stress of public school educators.

■ The second prong is a bit more difficult to apply. The initial problem is to define precisely what the "object or matter" was "that was the source of the harm." To a significant degree that object or matter was the fact of the ten students in the isolated hallway cheering on the fisticuffs of the two combatants. To the extent that that scene was the culpable "object or matter," it is clear that petitioner met it "involuntarily." A second component of the "object or matter" was petitioner's loss of control upon coming on that scene. If that loss of control under those circumstances resulted from a psychiatric compulsion set in motion by an already vulnerable psychic condition which itself had been caused by the previous two traumatic events, can it be reasonably said to have been "voluntary" within the meaning of the *Kane* standard? Perhaps not.

The third prong of the standard requires that the source of the injury must have been a great rush of force or uncontrollable power. In applying this standard we must first identify the source of the injury and then we must determine if it meets the criterion of a great rush of force or uncontrollable power. Viewed from at least one possible perspective, the source of the injury can be deemed to have been the fight between the students. If petitioner's body had been struck as a result of trying to stop the fight, that physical blow, had it caused a physical injury, would clearly have qualified as a great rush of force or uncontrollable power. Here it was petitioner's mind which was dealt a blow as a consequence of the fight. Thus, if the fight itself constituted a psychic assault which inevitably

set into motion petitioner's physical and ultimately devastating psychological responses, it may be viewed as constituting an external uncontrollable power.

We, of course, are not experts in matters affecting the functioning of the mind under abnormal stress and strain. We are, however, satisfied that there are sufficient factual indicia here to require further psychiatric exploration. We, therefore, have no alternative but to remand to the Board for further proceedings based upon further psychiatric testimony addressing the questions we have here raised, namely, whether petitioner's meeting "with the object or matter that was the source of the harm" was in any fair sense involuntary and whether the totality of the events set in motion by his coming upon the fight constituted a psychic stimulus of uncontrollable power.

We, moreover, point out that the shift in the original psychiatric focus which results from a *Kane* analysis may suggest the need to rethink the nature of the third incident altogether. It is clear that the 1977 event was the major causative contributor to petitioner's ultimate disability and that the December 1980 event was strongly reinforcing of the psychiatric problems triggered three years earlier. The 1980 event, however, had taken place just before the Christmas-New Year holiday. The third event therefore occurred only several weeks after petitioner's return to work following the holiday recess. He may well have been still affected by the second event. It may therefore be, in reconsidering the causative question, that the third event, quite apart from its characterization as traumatic within the *Kane* redefinition, was not a contributing factor at all but rather a symptomatic manifestation of a disability already fixed as a result of the synergistic operation of the first two events. We do not foreclose petitioner, on the remand, from addressing this issue by way of appropriate psychiatric evidence.

We remand to the Board of Trustees for further proceedings consistent herewith.