821 A.2d 98 (2003)
359 N.J. Super. 552
Peter ANGIOLA, Petitioner-Appellant,
v.
BOARD OF TRUSTEES, Public Employees' Retirement System, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2003.
Decided April 11, 2003.
David Sapiro, East Brunswick, argued the cause for petitioner (Sapiro & Gottlieb, attorneys; Mr. Sapiro on the brief).
David Dembe, Assistant Chief Attorney General, argued the cause for respondent (David Samson, Attorney General, attorney, Patrick DeAlmeida, Deputy Attorney General, of counsel and Susanne Culliton, Deputy Attorney General on the brief).
Before Judges HAVEY, A.A. RODRIGUEZ and PAYNE.
The opinion of the court was delivered by PAYNE, J.A.D.
Petitioner Peter Angiola appeals from a determination by the Board of Trustees, Public Employees' Retirement System (PERS) to deny him an accidental disability retirement allowance pursuant to N.J.S.A. 43:15A-43 on the ground that the total and permanent injuries sustained by him during the course of his work were not the result of a "traumatic event" as required by statute. We reverse. See Esposito v. Police and Fireman's Retirement System, 358 N.J.Super. 112, 817 A.2d 340 (App.Div.2003).
*99 Following injury in circumstances that we will soon describe, Angiola filed an application with PERS for accidental disability retirement benefits. Although ordinary disability retirement benefits were awarded, PERS denied Angiola's request for benefits available in cases of accidental disability. On appeal from that determination, PERS referred Angiola's application to the Office of Administrative Law for a hearing as a contested matter. There, cross-motions for summary decision upon stipulated facts, presented by way of a certification by Angiola, were filed with an administrative law judge (ALJ). The ALJ granted PERS' motion in a written decision that recommended that Angiola's application be denied because he had failed to demonstrate injury caused by a traumatic event, and PERS adopted that decision and recommendation.
We reproduce in its entirety the certification of Angiola that sets forth the facts that formed the basis for the underlying motions and the present appeal.
I, PETER ANGIOLA of full age, hereby certify as follows:
1. I am the Petitioner in the above matter.
2. On March 31, 1995 I was employed as a toll taker for the New Jersey Turnpike Authority.
3. On that date I was working in the tollbooth at Exit 9 on the New Jersey Turnpike.
4. The driver of an automobile approaching the tollbooth either lost control of his automobile, had a heart attack and died or had a heart attack, lost control of his automobile and died.
5. The automobile went airborne, struck another automobile and then was coming directly towards my tollbooth. Instead of striking my tollbooth, the automobile struck the top left corner of a tractor-trailer, which was exiting the tollbooth and then landed a few inches in front of the tollbooth.
6. The point of impact between the automobile and the tractor-trailer was approximately one foot from the tollbooth.
7. The tollbooth was configured so that there was a metal counter to the front of the tollbooth and another metal counter in the rear of the tollbooth. There was a door on the left where I was handing out tickets. I would get the tickets from the front counter. I was facing the front counter handing out tickets with my left hand to vehicles, which were coming from my front.
8. When I saw the automobile in the air coming toward my tollbooth, I jumped to the rear to avoid being struck and my low back struck the counter in the rear of the tollbooth. The counter was three to three and one-half feet high.
9. The accident happened at approximately 3:00 p.m. The distance I jumped backwards to avoid being struck [by] the car was approximately two feet.
The accidental disability retirement benefits sought by Angiola were available to him upon a showing of permanent and total disability, which in his case was uncontested, taking place "as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties...." N.J.S.A. 43:15A-43. A similar requirement that the disability result from a "traumatic event" appears in connection with the statutes providing for accidental disability pension benefits under the State's other two public pension systems: the Police and *100 Firemen's Retirement System (see N.J.S.A. 43:16A-7) and the Teacher's Pension and Annuity Fund (see N.J.S.A. 18A:66-39). Precedent construing each of the three statutes is thus relevant here.
An explanation of our rejection of the interpretation accorded the term "traumatic event" by the ALJ and PERS in Angiola's case lands us in the syntactical swamp that has mired our courts ever since the Legislature, in apparent reaction to a previously generous interpretation of the requirement that disability be caused by an accident in a fashion consonant with workers' compensation precedent, substituted for the term "accident" the requirement that the disability be caused by a "traumatic event." See Maynard v. Board of Trustees of the Teachers' Pension and Annuity Fund, 113 N.J. 169, 172-73, 549 A.2d 1213 (1988); Cattani v. Board of Trustees, Police and Firemen's Retirement System, 69 N.J. 578, 583-84, 355 A.2d 625 (1976) and Russo v. Teachers' Pension and Annuity Fund, 62 N.J. 142, 151, 299 A.2d 697 (1973) (discussing legislative and judicial history).
The inference logically to be drawn from this legislative amendment is that the Legislature sought to limit provision of accidental disability retirement benefits to more narrowly drawn circumstances and a smaller cohort than had previously been the case. However, the Legislature's linguistic formulation gave little clue as to the nature of the limits that it sought to impose.
What from the outset is noteworthy is the significant difference in the amount of benefits available under ordinary and accidental retirement benefit schemes. Ordinary retirement benefits approximate forty percent of final average compensation (N.J.S.A. 43:15A-45), whereas accidental retirement benefits can reach two thirds of final compensation. N.J.S.A. 43:15A-46. That accidental disability retirement benefits are so much higher suggests, in part, a recognition by the Legislature that additional compensation is warranted in instances in which the precipitating cause of an injury is so far outside the normal scope of risks that accompany a particular employment that the employee-victim is deserving of additional compensation. Otherwise, in instances of total permanent disability from work-related causes, a disparity in compensation makes no sense. The task has thus been to provide a meaningful definition to those narrow classes of traumatic events that are so unbargained-for in their occurrence in workplace life that the necessity of substantial additional compensation must be recognized.
In a decision in Hillman v. Board of Trustees, Public Employees' Retirement System, 109 N.J.Super. 449, 460-61, 263 A.2d 789 (App.Div.1970), we required, among other things, that to constitute a "traumatic" event, the event must be "undesigned, unexpected and unusual." Ibid. However, the Supreme Court rejected the Hillman formulation in Cattani, supra, 69 N.J. at 585, 355 A.2d 625, finding it to be "too broad" and to "frustrate[] the restriction which the Legislature intended to place on the granting of an accidental disability pension when it substituted the expression `traumatic event' for the word `accident.'" Ibid. The Cattani Court determined that:
The phrase `traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force.

[Id. at 586, 355 A.2d 625 (emphasis supplied).]
By setting the standard in the alternative, the Court thus recognized that a traumatic *101 event could occur either as the result of a contact or a noncontact situation. The Cattani Court also recognized that its definition was not exclusive, holding that "a traumatic event may possibly be found in some situations which do not literally fall within the external force or violence concept but still might be regarded as having a traumatic origin." Ibid.
Since Cattani, a majority of the Supreme Court has reasonably focused its definitional efforts on the "speeding train" type of external force or violence that is most frequently encountered in the workplace: those cases generated by catastrophic external events such as explosions, falling beams, and the like.[1] That focus led, in Kane v. Board of Trustees, Police and Firemen's Retirement System, 100 N.J. 651, 663, 498 A.2d 1252 (1985), to the following formulation, now imbedded in our jurisprudence:
[T]o be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
[Ibid.]
By the first part of this definition, the Court has excluded from disabilities deserving of additional compensation those caused by workplace stress, even of extraordinary nature, acting upon pre-existing latent conditions. See Cattani, supra, 69 N.J. 578, 355 A.2d 625. See also Kane, supra, 100 N.J. at 661, 498 A.2d 1252 (approving Cattani).
By its second prong, the Court has excluded those disabilities occurring when "the injured party actually set in motion the object or source of his injury." Gable v. Board of Trustees of the Public Employees' Retirement System, 115 N.J. 212, 224, 557 A.2d 1012 (1989), citing Kane, supra, Maynard, supra, 113 N.J. 169, 549 A.2d 1213 and Ciecwisz v. Board of Trustees, Police and Firemen's Retirement System, 113 N.J. 180, 549 A.2d 1218 (1988). For this reason, in Kane, a decision on three separate benefit applications, the Court denied accidental disability benefits to a police officer who applied too much force to his wrist while attempting to close a fire hydrant, thereby permanently injuring it. In contrast, in Maynard and Ciecwisz, slip and fall injuries were declared, by their nature, not to constitute voluntary occurrences (Maynard, supra, 113 N.J. at 175, 549 A.2d 1213), although initial denials of recovery were affirmed on other grounds. Similarly, in Gable, a decision on appeals *102 by two corrections officers from denials of accidental disability benefits, the Court found that officers who sustained injuries in assaults by violent inmates had not met voluntarily with the source of their harm, despite the fact that their work posed a degree of risk. Gable, supra, 115 N.J. at 224, 557 A.2d 1012.
Finally, the Court has required that the "source" of the disabling injury be "a great rush of force or uncontrollable power," a requirement that has led to considerable interpretational difficulty, even within the Supreme Court itself. See Maynard, supra, 113 N.J. at 177-79, 549 A.2d 1213 (Stein, J., concurring and O'Hern, J., dissenting); Ciecwisz, supra, 113 N.J. at 182-192, 549 A.2d 1218 (O'Hern, J. and Stein, J., dissenting). See also Mazza v. Board of Trustees, Police and Firemen's Retirement System, 143 N.J. 22, 25-30, 667 A.2d 1052 (Handler, J. dissenting) (the Court holding in a per curiam opinion on narrow, standard of review grounds, that injuries sustained by a mounted park officer when his horse reared, causing the officer to twist and rupture several spinal discs, had not sustained an injury as the result of a traumatic event).
In the present case, the ALJ and PERS found that Angiola had failed to meet both the second and third prongs of Kane. With respect to the second prong, the ALJ reasoned:
Here, petitioner was injured when he jumped back in response to seeing a car heading toward his tollbooth.... [P]etitioner acted voluntarily when he jumped in reaction to the car. However ... when petitioner jumped back, he did not intend to come into contact with the counter.
In my view, and based upon the record, I FIND that the source of the harm was petitioner's action of jumping backward, not the counter. Thus the petitioner has not met the second prong of the test.
We disagree with the ALJ's analysis and conclusion in this regard. We find error first in the ALJ's focus on the character of Angiola's own actions in response to the threat of the oncoming car. As our prior discussion of the second prong of the Kane test demonstrates, the Supreme Court's focus has not been on the voluntariness[2] of the defensive measures taken when confronted with a traumatic risk. Instead, it has been on whether the employee set that risk in motion. Kane, supra, 100 N.J. at 663, 498 A.2d 1252. Here, Angiola did nothing that would have occasioned the car that flew at him to go out of control. He was not behind the wheel; he was merely performing his duties in the toll booth. He thus did not set in motion the source of his injury any more than did the corrections officers in Gable who were suddenly beset by inmate violence.
Turning to the third prong, the ALJ held in this case, and the Board agreed, that the source of Angiola's injury was not a great rush of force or uncontrollable power. In reaching this conclusion, the ALJ disregarded entirely the danger to Angiola posed by an oncoming, airborne automobile, and focused instead solely on Angiola's conduct in moving backward in response to that danger, which he had previously determined to be voluntary. Thus, the ALJ concluded that "[t]here was no external force at work." We find this view to be fatally myopic, since it considers only half of the continuum of events comprising Angiola's accident and disregards utterly the event that was the precipitating cause of all that followed: the loss of control *103 of a vehicle under circumstances that caused it to be propelled through the air toward Angiola, landing just inches short of the booth in which he was working.
The error in the ALJ's approach was to break up this continuum into a series of "incidents," with the last incident being Angiola's reflexive reaction. This hyper-technical approach is not justified either by the Legislature's use of the more definitionally expansive word "event," or by prior Supreme Court precedent. Here, the occurrence or noteworthy event was the airborne progress of the out-of-control Buick. By all accounts, this event lasted mere moments in time. We know from experience that any event can be "slowed down" by viewing it in small increments. Thus an event of a second can be viewed as a sequence of a million microseconds. However, it remains one event, even when analyzed serially. Whether Angiola was struck by the Buick or injured himself while attempting to escape its path does not alter the nature of the event. A focus on the latter half of the sequence does not mean that two events have taken place. The Legislature could not have intended that, in the former situation, accidental retirement benefits would be allowed but not in the latter. Such a result finds no support in the language or purpose of the statute.
When we view the facts presented here in their entirety, we find that they fit comfortably within both the intent and the language of Kane's third prong, however parsed. If what the Legislature wished to do was to limit the incidence of cases warranting accidental disability retirement benefits to those in which the source of the injury was truly exceptional and thus beyond the scope of those occurrences to which workers must become enured, that purpose is not undermined here. Few tolltakers do, and none should be required to confront the threat posed by flying vehicles. If they must, and permanent and disabling injury results, those injuries are just that narrow type of injury for which accidental disability retirement benefits should be available.
Moreover, no one can doubt that a vehicle propelled into the air as the result of an accidental occurrence constitutes a "great rush of force or uncontrollable power." True, in this case the car did not hit Angiola. However, precedent does not impose that requirement, but merely provides that the force or power be "the source" of the injury. Kane, supra, 100 N.J. at 663, 498 A.2d 1252. The "steam engine" can stop short, so long as the requisite causal relationship to reactive injury is shown. There is no indication that the Legislature intended exclusion of benefits in a case such as this in which a worker is injured as a result of being exposed to a rush of uncontrolled force, and the worker is unsuccessful in avoiding the consequences of the force. Indeed, the Kane Court has signaled as much by including explosion within those causative events that it deemed to be traumatic. Id. 100 N.J. at 663, 498 A.2d 1252. Injury from an explosion, like the injury here, does not require a "hit" per se. In this and other respects, we agree with the recent decision of another panel of our court, which determined that injuries sustained by a police officer in avoiding a speeding car were as much the result of a "traumatic event" as they would have been if the officer's injuries had resulted from actual contact. See Esposito, supra, 358 N.J.Super. at 121, 817 A.2d 340.
As a consequence, we find that in reaching its determination to deny accidental disability benefits, the Board clearly erred in its interpretation of the intent of the qualifying statutory term "traumatic event" and its application of that language *104 to the facts of this case. Matter of Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996).
Accordingly, the decision of the Board is reversed.
NOTES
[1] The Court has included falls from high ladders within this category, without an accompanying description of the circumstances leading to such falls that would warrant recovery of accidental disability pension benefits. See Kane v. Board of Trustees, Police and Firemen's Retirement System, 100 N.J. 651, 663, 498 A.2d 1252 (1985). As a result, in some cases, the gravitational force generated by the fall has been found to constitute the equivalent of the great rush of force required in Kane for recovery. See, e.g. Quigley v. Board of Trustees, Public Employees' Retirement System, 231 N.J.Super. 211, 555 A.2d 642 (App.Div.1989) (granting benefits to applicants who negligently fell distances of five and four feet, respectively, on the basis of the Kane Court's ladder example). We suggest that cases involving falls from points located above ground level could be resolved in a fashion that is more consistent with the rationale of Kane by turning from a focus on the force with which the body hits the ground to a focus on what caused the fall. Despite its use of the ladder example, the substance of the Kane Court's opinion compels the conclusion that the originating source, not the mechanism of the injury, is implicated by the requirement that the injury have its source in a traumatic event.
[2] Although inessential to our point, we find that Angiola's reflexive movement can not be considered voluntary in the circumstances of this case.