915 A.2d 48

SHARON K. SMITH, APPELLANT, v. STATE OF NEW JERSEY,
DEPARTMENT OF TREASURY, DIVISION OF PENSIONS
AND BENEFITS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 20, 2006—Decided January 29, 2007.

210

Before Judges C.S. FISHER, YANNOTTI and MESSANO.

*Benjamin A. Spivack* argued the cause for appellant (*Oxfeld Cohen*, attorneys; *Mr. Spivack*, of counsel and on the brief).

*Dawn Harris*, Deputy Attorney General, argued the cause for respondent (*Stuart Rabner*, Attorney General, attorney; *Michael Haas*, Assistant Attorney General, of counsel; *Susanne Culliton*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

In this appeal, we reject the novel contention that a public employee may be eligible for accidental disability pension benefits, pursuant to *N.J.S.A.* 43:15A–43, when the traumatic event that caused the disability occurred before the employee became a member of the Public Employees' Retirement System (PERS).

Sharon K. Smith was hired on March 24, 2003 by the Department of Human Services to work as a nurse at Trenton Psychiatric Hospital. On May 29, 2003, while a temporary employee, Smith was struck on the head by a patient and placed on sick leave. On April 3, 2004, as her second year of employment commenced and while still on sick leave, Smith enrolled in PERS. She then requested and, in July 2004, was permitted to purchase her year of temporary service for the period from March 24, 2003 through April 3, 2004.

A few months later, Smith applied for accidental disability pension benefits, alleging a permanent and total disability resulting from the event that occurred on May 29, 2003. Without

considering whether Smith was "permanently and totally disabled as a direct result of a traumatic event," *N.J.S.A.* 43:15A–43, the PERS Board determined that Smith was not eligible for such benefits because she was not, at the time of the injury, a PERS member. In appealing that final agency determination, Smith contends that eligibility for accidental disability pension benefits is governed not by her PERS membership status at the time of the traumatic event but by her employment status at the time of the application for benefits. We reject this argument.

*N.J.S.A.* 43:15A–43 contains the guidelines for the conferring of such a pension and states that "a member" shall, upon application, "be retired by the board of trustees, if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties, on an accidental disability allowance." The word "member" in this context obviously means a "PERS member," and this defining of the eligible class of persons, in our view, reflects the legislative intent to preclude a temporary employee from obtaining accidental disability pension benefits. Smith does not argue to the contrary, but instead claims that, because she later became a PERS member and sought accidental disability pension benefits after she became a member, the plain language of *N.J.S.A.* 43:15A–43 permits the relief she seeks.

Smith has also invoked Justice Francis's oft-cited comment that, because they are "remedial in character," pension statutes "should be liberally construed and administered in favor of the persons intended to be benefited thereby." *Geller v. Dep't of Treasury,* 53 *N.J.* 591, 597–98, 252 *A.2d* 393 (1969). *See also Steinmann v. Dep't of Treasury,* 116 *N.J.* 564, 572, 562 *A.2d* 791 (1989); *Harris v. Bd. of Trs., P.E.R.S.,* 378 *N.J.Super.* 459, 465, 876 *A.2d* 305 (App.Div.2005); *Estate of Hagel v. Bd. of Trs., P.E.R.S.,* 226 *N.J.Super.* 182, 186, 543 *A.2d* 1010 (App.Div.1988); *Fiola v. Dep't of Treasury,* 193 *N.J.Super.* 340, 347, 474 *A.2d* 23 (App.Div.1984). That policy argument, however, only begs the question posed here, because the present controversy centers on

whether Smith is a "person intended to be benefited" by the pension statute in question. That is, an employee is entitled to the liberality spoken of in *Geller* when eligible for benefits, but eligibility is not to be liberally permitted. Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to "obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und." *Chaleff v. Teachers' Pension & Annuity Fund Trustees,* 188 *N.J.Super.* 194, 197, 457 *A.*2d 33 (App.Div.), *certif. denied,* 94 *N.J.* 573, 468 *A.*2d 215 (1983). *See also McKenzie v. Bd. of Trs., P.E.R.S.,* 389 *N.J.Super.* 456, 460, 913 *A.*2d 810 (App.Div.2006); *Kramer v. Bd. of Trs., P.E.R.S.,* 291 *N.J.Super.* 46, 676 *A.*2d 1117 (App.Div.1996), *certif. denied,* 148 *N.J.* 458, 690 *A.*2d 606 (1997).

Despite the parties' expressions of certitude as to the validity of their respective interpretations, we recognize that *N.J.S.A.* 43:15A–43 does not explicitly reject or embrace either position. It does unambiguously mandate that only a PERS member may apply for an accidental disability retirement, but it does not expressly permit or preclude the conferring of accidental disability pension benefits when the member's application is based upon a traumatic event that occurred prior to the member's enrollment. Smith recognizes that if she is at all eligible it is because the Legislature implicitly intended that result and not because the language of the statute unambiguously confers that right.

In urging this result, Smith initially acknowledges, as she must, that prior legislative amendments to this statutory scheme have sought to raise the bar of eligibility for an accidental disability pension. However, Smith also correctly argues that those amendments have focused on the extent of the employee's injury or the nature of the triggering event and not on the member's employment status at the time of the disabling injury. For example, in the mid–1960's the statutes governing the Police and Firemen's Retirement System, *N.J.S.A.* 43:16A–7, the Teachers' Pension and Annuity Fund, *N.J.S.A.* 18A:66–39, and PERS, *N.J.S.A.* 43:15A–

43—all of which are similarly worded and similarly interpreted—were amended to replace "accident" with "traumatic event" as the triggering circumstance for the conferring of accidental disability pension benefits. These amendments have been understood as revealing the Legislature's intent "to make the granting of an accidental disability pension more difficult." *Kane v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 100 *N.J.* 651, 661, 498 *A.2d* 1252 (1985) (quoting *Cattani v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 69 *N.J.* 578, 584, 355 *A.2d* 625 (1976)); *see also Fairweather v. P.E.R.S.*, 373 *N.J.Super.* 288, 294–95, 861 *A.2d* 186 (App.Div. 2004).[1] Each successive legislative amendment to the statutory schemes that govern public pension rights has been understood as making it more difficult to qualify for an accidental disability pension than before.[2] *See generally* Solomon A. Metzger, *Public Sector Accidental Disability Pensions in New Jersey: The Law of Dramatic Events*, 31 *Rutgers L.J.* 491 (2000).

---

[1] Our Supreme Court undertook to "bring clarification" to what constitutes a "traumatic event" in *Kane* by requiring that an employee "must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power." 100 *N.J.* at 663, 498 *A.2d* 1252. The *Kane* test has generated a considerable amount of additional litigation, *see, e.g., Maynard v. Bd. of Trs., Teachers' Pension and Annuity Fund*, 113 *N.J.* 169, 549 *A.2d* 1213 (1988); *Ciecwisz v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 113 *N.J.* 180, 549 *A.2d* 1218 (1988); *Fairweather, supra*, 373 *N.J.Super.* at 296–301, 861 *A.2d* 186; *Angiola v. Bd. of Trs., P.E.R.S.*, 359 *N.J.Super.* 552, 557–59, 821 *A.2d* 98 (App.Div.2003); *Esposito v. Police & Fireman's Ret. Sys.*, 358 *N.J.Super.* 112, 117–20, 817 *A.2d* 340 (App.Div.2003), and may soon be further refined, since the Court has granted certification to review our recent decision, which held that "a psychic stimulus occurring in the course of public employment" was not sufficient because it did not involve "an accident that involves application of an external physical force," *Moore v. Bd. of Trs., State Police Ret. Sys.*, 382 *N.J.Super.* 347, 349, 889 *A.2d* 445 (App.Div.), *certif. granted*, 186 *N.J.* 365, 895 *A.2d* 452 (2006).

[2] The Legislature further raised the bar of eligibility in 1966 by precluding an accidental disability retirement for a pre-existing cardiovascular, pulmonary or musculo-skeletal condition unless it was a "direct result of a traumatic event occurring in the performance of duty." *N.J.S.A.* 43:15A–43.

This legislative trend in favor of rendering more difficult the conferring of accidental disability pension benefits militates against the liberal approach forcefully championed by Smith in this matter. If adopted, Smith's interpretation would expand the class of persons eligible for the significantly greater monetary benefits permitted when an allowance pursuant to *N.J.S.A.* 43:15A–43 is made,[3] and would have a tendency to place a greater strain on the financial integrity of the fund in question and its future availability for those persons who are truly eligible for such benefits. *See Mount v. Trustees of P.E.R.S.*, 133 *N.J.Super.* 72, 86, 335 *A.2d* 559 (App.Div.1975) (recognizing that the members of "[t]he board of trustees are fiduciaries and therefore have a duty to protect the fund and the interests of all beneficiaries thereof," which duty must be exercised "with due care, diligence and skill in administering the trust.").

In rejecting Smith's argument, we conclude that implicit in the Legislature's utilization of the word "member" in *N.J.S.A.* 43:15A–7—in defining the class of persons who may seek an accidental disability pension—is the Legislature's intent to preclude the granting of such relief to a member when the traumatic event occurred prior to that member's enrollment in PERS. When Smith was injured, she was a temporary employee who was not eligible to be enrolled in PERS. *N.J.S.A.* 43:15A–7(b). Although we acknowledge that the wording of *N.J.S.A.* 43:15A–43, in this context, is subject to more than one interpretation, we agree with the PERS board that an employee must be a PERS member at the time of the alleged traumatic event and not merely when the application for the accidental disability pension is filed. We reject the logic of the argument that the Legislature implicitly created as large a class of eligible employees as urged by Smith and we

---

[3] Accidental disability pension benefits consist of 66.67% of the employee's salary to be paid for life, regardless of age, service time or contributions made to the system, *N.J.S.A.* 43:15A–46, as compared, in this case, to an ordinary disability pension benefit of 40% of the employee's final compensation, *N.J.S.A.* 43:15A–45.

decline the invitation to expansively view the scope of *N.J.S.A.* 43:15A–43 to cover a public employee based on events that occurred before the employee became a PERS member. *See Chaleff, supra,* 188 *N.J.Super.* at 198, 457 *A.*2d 33 (holding that an expansive view of the public pension statutes is undesirable because it "may threaten the fiscal soundness of the fund," and declaring that the availability of benefits "should be undertaken by the Legislature and not by the courts under the guise of liberal construction.").

 We also reject Smith's argument that she became eligible by purchasing credit for her temporary service, which included the date upon which she was injured, after she became a PERS member. In a strikingly similar matter, a person employed as a nurse at the Trenton Psychiatric Hospital was injured by a patient within two weeks of his hiring. After the passage of one year from his hiring, the employee enrolled in PERS, purchased credit for his one year of temporary service, and applied for an accidental disability pension. The PERS board concluded that the purchase of credit does not change the effective date of membership in PERS. *Donovan v. Bd. of Trs., P.E.R.S.,* 94 *N.J.A.R.*2d (Vol.17) 33 (Div. of Pensions). We likewise agree that a credit purchase has no bearing on an employee's eligibility for accidental disability pension benefits. Smith's membership in PERS was predicated on her one-year temporary term of continuous service. This circumstance was not met at the time of the injury and the purchase of credit, absent some clear indication from the Legislature to the contrary, cannot alter the date the employee became a PERS member.

Not only do we agree with the logic of *Donovan's* approach, but we adhere to that determination because we also find that the PERS board's interpretation of *N.J.S.A.* 43:15A–43, as reflected in *Donovan* and in the present case, is not plainly unreasonable and, thus, entitled to our deference. Recently, we observed that "[a]lthough an agency's interpretation of the statute it administers is not binding upon us, the agency's interpretation is entitled to

'substantial deference' 'provided it is not plainly unreasonable.' "
*McKenzie, supra,* 389 *N.J.Super.* at 461, 913 *A.*2d 810 (quoting
*Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992)).
As we have observed, the Legislature has continually narrowed
eligibility for an accidental disability pension out of concern for the
fund's financial integrity. Where once such benefits could be
conferred when a disability resulted from an "accident," there is
now a requirement that the disability be directly brought about by
a "traumatic event," which the courts have further limited through
the adoption and application of the *Kane* test. The trend repre-
sented by this evolution in the statutory scheme, coupled with
what we deem to be the more sensible reading of *N.J.S.A.* 43:15A–
43, convinces us that the interpretation of this statute originally
adopted by the PERS board in *Donovan,* and applied by the
PERS board here, is deserving of our deference because it is
certainly not "plainly unreasonable." *Merin, supra,* 126 *N.J.* at
436–37, 599 *A.*2d 1256.

We conclude that *N.J.S.A.* 43:15A–43 does not permit the
awarding of accidental disability pension benefits to an employee
who was not a PERS member at the time of the alleged traumatic
event. The employee's purchase of prior service covering the
period of time during which the traumatic event occurred does not
alter the employee's status at the time of the traumatic event nor
does it alter the date upon which the employee became a PERS
member.

Affirmed.