182 N.J. Super. 50 (1981)
440 A.2d 37
KATHRYN B. ZIGMONT, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES, TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1981.
Decided December 17, 1981.
*51 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Richard A. Friedman argued the cause for appellant (Ruhlman and Butrym, attorneys).
*52 Sharon M. Joyce, Deputy Attorney General, argued the cause for respondent (James R. Zazzali, Attorney General of New Jersey, attorney; Erminie L. Conley, Assistant Attorney General, of counsel).
The opinion of the court was delivered by PRESSLER, J.A.D.
Petitioner Kathryn B. Zigmont appeals from a determination of the Board of Trustees, Teachers' Pension and Annuity Fund (Board), disqualifying her from the purchase of retirement credit for the period from January 1, 1975 to September 1, 1976, when she was on unpaid maternity leave. We reverse.
The facts surrounding this controversy are simple and undisputed. Mrs. Zigmont has been continuously employed by the Union County Regional High School District (District) since 1966 and has been a member of the Teachers' Pension and Retirement Fund (TPAF) since 1965. Shortly before the commencement of her maternity leave at the beginning of 1975, she inquired of a Mrs. Mumford, a District employee, as to whether she could purchase credit for the period of the leave and was erroneously informed that she could not. Mrs. Mumford apparently filled that clerical position whose duties included all of the ministerial liaison functions in respect of TPAF bookkeeping and information transmission. Mrs. Zigmont returned to active service at the start of the 1976-1977 academic year, taking no further action with respect to the purchase of pension credit. Sometime in April, 1979, 2 1/2 years after her return, she attended a teachers meeting at which an employee of the Division of Pensions spoke, and she thereby discovered that she had been misinformed by Mrs. Mumford. She thereupon promptly communicated with the Fund in an effort to make the purchase but was not permitted to do so on the ground that her request was untimely. Ultimately, she appealed to the Board, which afforded her a hearing by an administrative law judge, who recommended the denial of her purchase request because it was made too late. The Board accepted this recommendation and petitioner appeals.
*53 At issue here is the construction of N.J.S.A. 18A:66-8 and the determination of whether it imposes, as the Board concluded, an unrelaxable and mandatory period of one year following return to service for the making of the purchase request. This provision, prior to amendment in 1971, provided first that a teacher on leave of absence granted by the employer or permitted by law was entitled to continue as a member of the retirement system provided he returned to service within five years from the date such leave commenced but that "no credit for retirement purposes shall be allowed except as provided hereinafter in this section." The proviso referred to read in pertinent part as follows:
In computing service for retirement purposes ... no time during which such teacher was absent on such leave shall be credited unless such absence was for a period of less than three months or unless service was allowed for retirement purposes within one year following his return to service after completion of such leave, both by his employer and by the board of trustees, or unless the period of leave was specifically allowed for retirement purposes by the provisions of any law of this State.
The Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1, et seq., was comprehensively amended by L. 1971, c. 121, the Introductory Statement to which explained that its intent was to "liberalize benefits and provide for a uniform and more economical administration." The statement further pointed out that among its major benefit liberalizations was the permitting of "purchase of service when on official leave of absence." Although there is no specific statement of how the service-purchase provision was actually intended to be liberalized, the language of N.J.S.A. 18A:66-8 was then amended to read, in pertinent part as follows:
In computing service, time during which such teacher was absent on an official leave without pay shall be credited if such absence was for a period of (1) less than 3 months or (2) up to a maximum of 2 years if the leave was due to the member's personal illness or maternity and the period of leave is allowed for retirement purposes within 1 year following his return to service after the termination of such leave, or (3) the period of leave was specifically allowed for retirement purposes by the provisions of any law of this State.
It is, of course, the second enumerated proviso above which is here applicable. In construing it the administrative law judge concluded that

*54 ... the statute in question is clear, unequivocal and unambiguous. The purchase of pension credit for an authorized leave of absence without pay must be effectuated within one year following the return to service after the termination of such leave. There is no room for construction or discretion unless petitioner was caused to change her position by reliance upon misinformation directly disseminated to her by the pension system.
The Board agreed, but we do not.
In determining the limitations import of the one-year provision, we start with the principle that while the construction of a statute by the agency responsible for its administration and enforcement is entitled to our deference, we are nevertheless not bound by that interpretation or by the agency's determination of a strictly legal issue. See Bernstein v. Teachers' Pension, etc., Trustees, 151 N.J. Super. 71, 76 (App.Div. 1977). And see also, Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973); In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 333 (App.Div. 1981); Essential S. and L. Assn. v. Howell, 105 N.J. Super. 424, 433 (App.Div. 1969). In our construction of the statutory section here in controversy we are, moreover, compelled to give substantial weight to the remedial nature of this pension act which imposes on us the consequent obligation to construe it liberally in favor of its intended beneficiaries. See Geller v. N.J. Treasury Dep't., 53 N.J. 591, 597-598 (1969), a teacher pension case, in which Justice Francis further observed that
Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment and to render faithful and efficient service while so employed... They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. [at 597, 252 A.2d 393]
See, also Bernstein v. Teachers' Pension, etc., Trustees, supra. Application of that general constructional canon is, furthermore, here reinforced by the explicit legislative expressions of the purposes of the 1971 amendments heretofore referred to.
We recognize, however, that the desideratum of liberal statutory construction must nevertheless not be permitted to impinge upon the Fund's financial integrity. See Fair Lawn Ed. Ass'n. v. Fair Lawn Bd. of Ed., 79 N.J. 574 (1979). And, see, Teachers' *55 Pension, etc., Trustees v. La Tronica, 81 N.J. Super. 461 (App. Div. 1963), certif. den. 41 N.J. 587 (1964), in which this court observed that
A pension fund is based upon actuarial principles incorporating known or reasonably anticipated statistics with regard to life expectancies and present and future payments into and out of the fund, to the end that all members may be served without jeopardizing the financial soundness of the fund. [at 470]
The statutory language here in dispute, construed in view of this complex of predicates, persuades us that the one-year proviso of N.J.S.A. 18A:66-8 should not be construed as imposing a limitations period which is inexorable, inflexible and unremediable, but rather as one which lies within the power of the Board to relax in appropriate circumstances where there are overriding considerations of equity.
First, a comparison of the language of the 1971 version of N.J.S.A. 18A:66-8 with its pre-amendment text makes clear a meaningful legislative intent to shift the presumption in respect of service purchase for leaves of absence from nonavailability to availability. Thus, the earlier version stated that "no time" during which the teacher was absent "shall be credited" "unless" certain conditions were met. The 1971 version declares as its premise that the lease time "shall be credited" if certain conditions are met. We are, therefore, satisfied that the Legislature's purpose was to emphasize, not the meeting of the conditions, but rather the right to purchase the credit and hence to subordinate the conditions to its declaration of the existence of that right.
Furthermore, we are loathe to ascribe strict limitations consequences to so ambiguous and singular a phrase as "if ... the period of leave is allowed for retirement purposes within 1 year following his return to service." We point out that throughout the TAPF Law, time periods are employed subject to their customary import. Thus, typically, a member is required to take a specific action within a specific time period in order to avoid or achieve a specific consequence. See e.g., N.J.S.A. 18A:66-11 (application for enrollment in TAPF by teachers in military service); 18A:66-14 (application for credit for temporary service). *56 The point, of course, is that the ordinary concomitant of a limitations period is the according to the person potentially affected thereby of the power of definitive unilateral action by which he can bring himself within the limitations period. The equivocal provision that the leave period is creditable for retirement purposes only if "allowed" by some agency other than the affected person is therefore inconsistent with and anomalous to the ordinary structuring of a limitations period. The phrase itself, moreover, raises many questions. Allowed by whom? Allowed on what showing and by what standard? Since there is a right to the credit, is it automatically allowed if the member returns within two years? And, if not, on whose initiative and by what mechanism is it allowable? Is it allowable beyond one year if applied for on the last day of the one-year period? The plethora of these substantive-content queries regarding the meaning of "allowed" and the implementation of whatever that meaning may be persuades us of the inappropriateness of construing that expression as defining a limitations provision in the traditional sine qua non or jurisdictional sense. We are satisfied that had the Legislature intended to create such a limitations provision, it could have clearly done so by employing the ordinary usage of requiring the returned member to make an application for creditable time within the specified period.
We are further satisfied that a construction of the statutory section which would permit the Board, for good cause, to allow the credit after the lapse of a year would in no way impair the financial integrity of the Fund. This is so because the 1971 amendment of N.J.S.A. 18A:66-8 provides that the "method of computation, the terms of the purchase and credit granted shall be identical to those stipulated for the purchase of previous membership service by members of the fund as provided by section 18A:66-9." The computations stipulated by N.J.S.A. 18A:66-9 are, in turn, based exclusively on actuarial considerations dependent upon the member's age and salary at the time of the purchase. The extent of the lapse in time between discontinuance of previous service and resumption of service is *57 thus irrelevant to the computational process. Hence any delay in making the purchase will prejudice only the member. It will not prejudice the Fund since the extent of the delay in purchase is, in effect, a factor built into the statutory computational method.
As we have heretofore indicated, we do not suggest that the one-year period, ambiguous as it may be, should be routinely ignored. We hold only that it may be relaxed, as a nonjurisdictional proviso, when appropriate. We are further satisfied that such relaxation is appropriate here. In so concluding, we recognize that clerical employees of the member's employer are not ordinarily agents of the Board and hence that their errors, which may prejudice a member's rights and expectations in respect of the Fund, are not typically regardable as errors by the Board itself such as would justify application of substantial compliance or estoppel doctrines. See, e.g., In re Krah, 130 N.J. Super. 366 (App.Div. 1974). Cf. Bernstein v. Teachers' Pension, etc., Trustees, supra.
On the other hand, the member's employer does have statutory duties to perform vis-a-vis the member and the Fund in terms, e.g., of making withholdings from salary, transmitting money and bookkeeping data, and providing relevant information. N.J.S.A. 18A:66-32. We note further that N.J.S.A. 17:3-1.5(a) designates the secretary of the local board of education as the employer's certifying agent, and that N.J.A.C. 17:3-1.5(b) imposes upon the certifying agent the responsibility for the performance of "the duties prescribed by N.J.S.A. 18A:66-32 and all other duties relating to matters concerning the fund." The local Board secretary here, Harold R. Burdge, Jr., apparently delegated the performance of these duties to Mrs. Mumford, and his reliance on her would seem to us to have justified petitioner's reliance on her as well. Indeed, Mr. Burdge made the following written statement to the Board in support of petitioner's claim:
Mrs. Zigmont has asked for verification that our Payroll Clerk, Mrs. Janet Mumford, told her in 1975 that she could not buy back credit in the pension fund for her maternity leave of absence.

*58 Although this cannot be directly verified because Mrs. Mumford is deceased, I have personally witnessed Mrs. Mumford having made this statement on several occasions. Her claim was that you could only buy back credit for prior service.

I must sheepishly admit that until Mrs. Zigmont raised this issue, I too thought Mrs. Mumford was correct.
I trust that this misinformation has not adversely inconvenienced either the pension system or Mrs. Zigmont.
Thus, while we do not hold that the Board was bound, as it were, by Mrs. Mumford's error, we are satisfied that that error, coupled with petitioner's reasonable reliance thereon and her prompt action to secure her rights upon learning of it, are factors which, in the absence of prejudice to the Fund, must be deemed to be an appropriate basis for invoking the Board's remedial action.
The determination of the Board is reversed and we remand for a calculation by it of the terms upon which, pursuant to N.J.S.A. 18A:66-9, petitioner may purchase retirement credit for her maternity leave.