188 N.J. Super. 194 (1983)
457 A.2d 33
WILLIAM CHALEFF, PETITIONER-APPELLANT,
v.
BOARD OF TRUSTEES, TEACHERS' PENSION & ANNUITY FUND, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1983.
Decided February 7, 1983.
*196 Before Judges BISCHOFF, J.H. COLEMAN and GAULKIN.
Richard A. Friedman argued the cause for appellant (Ruhlman, Butrym & Friedman, attorneys).
Gale P. Simon, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
A section of the Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1 et seq., permits purchase of pension credit for time during which a teacher was absent on an official leave without pay if "such absence was for a period of (1) less than three months or (2) up to a maximum of two years if the leave was due to the member's personal illness or maternity...." N.J.S.A. 18A:66-8. The chief issues presented by this appeal are (1) whether "maternity leave" as used in the statute encompasses a leave for child care after the pregnancy-related disability has passed, and (2) if so, whether fathers as well as mothers can qualify for such a child care leave. The Teachers' Pension and Annuity Fund Board (TPAF) answered the first question in the negative and did not reach the second one. We affirm.
The facts are not disputed. Petitioner, a teacher employed by the Englewood Public Schools, was granted a child care leave of absence from October 9, 1978 until September 1, 1979. Petitioner's son had been born in February 1977, after which petitioner's wife cared for the child at home. Petitioner had requested the leave because his wife was going to return to work and petitioner was going to assume child care and household duties.
In July 1979 petitioner communicated with the Division of Pensions and stated he wished to purchase pension credits for the time he was not working. His request was rejected for the reason that "[t]here is no provision in the statute to purchase a leave of absence for child care reasons." He appealed to the *197 TPAF Board of Trustees which upheld the denial of his application. Petitioner was granted a formal hearing and the administrative law judge ruled in petitioner's favor, concluding that "maternity" should be broadly construed to include child care by both female and male members of the pension fund. The Board of Trustees rejected the recommendation of the administrative law judge, stating:
... [T]he Board holds that for the purpose of N.J.S.A. 18A:66-8 the word "maternity" refers solely to the state of being pregnant. Therefore a TPAF member may purchase pension credit for leaves of absence occasioned by pregnancy and any resultant disability. A leave of absence in excess of three months granted so that a member may care for a child can not be considered to be a maternity leave.
On this appeal petitioner contends the Board erred in excluding child care leaves from the category of "maternity leaves" for which pension credits may be purchased under N.J.S.A. 18A:66-8, and commences his argument by reminding us that since N.J.S.A. 18A:66-8 is a pension statute it is to be liberally construed, citing, among other cases, Geller v. Treasury Dep't of New Jersey, 53 N.J. 591 (1969); Zigmont v. Teachers' Pension, etc., Fund Trustees, 182 N.J. Super. 50 (App.Div. 1981), rev'd 91 N.J. 580 (1983); Lyons v. State, 153 N.J. Super. 396 (App.Div. 1977). However, the desirability of a "liberal construction" in favor of intended pension beneficiaries should not obscure or override considerations of (1) a potential adverse impact on the financial integrity of the Fund, Zigmont, supra, 182 N.J. Super. at 54; see, also Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574, 582-583 (1979), and (2) the requirement that "in the absence of an explicit indication of a special meaning, words will be given their ordinary and well understood meaning." Service Armament Co. v. Hyland, 70 N.J. 550, 556 (1976); Fahey v. Jersey City, 52 N.J. 103, 107 (1968).
In essence, petitioner's contention is that the term maternity should be given a broad meaning to include "child care". He argues such a meaning was ascribed to the word maternity in Farley v. Ocean Tp. Bd. of Ed., 174 N.J. Super. 449 (App.Div. 1980), certif. den. 85 N.J. 140 (1980), and found acceptance in a *198 1976 unpublished opinion of the Board, In re Fralinger, where a female teacher was permitted to purchase two years of pension credit after a child care leave following an adoption.
The word "maternity" is a common and well used word in the general vocabulary. It is defined in Webster's Third New International Dictionary:
a. the quality or state of being a mother: motherhood; 2. the quality or state of being pregnant (successive maternities)
Roget's Thesaurus suggests the following synonyms: motherhood, mothership, motherliness and maternalness.
Common words such as "maternity ward" and "maternity clothes" have inseparably linked the word to pregnancy, a condition belonging exclusively to the female sex. We decline to read "maternity leave" as "child care leave," which the Board concedes would necessarily be available to both men and women. We are informed that to construe "maternity" in the context of N.J.S.A. 18A:66-8 to embrace periods of "child care" will place an added substantial financial burden upon both the State and the pension fund. If a member purchases pension credits, his payment covers only a portion of the cost of the value of each year's service credit. The State must assume the balance of the cost involved. Further, the pension fund has been actuarially funded without consideration of this added burden. The extension sought by petitioner may threaten the fiscal soundness of the fund. Such an extension should be undertaken by the Legislature and not by the courts under the guise of liberal construction.[1]MacMillan v. Taxation Div. Director, 180 N.J. Super. 175, 177 (App.Div. 1981), aff'd o.b. 89 N.J. 216 (1982).
We find the Farley case inapposite. That case involved the interplay between the statute prohibiting discrimination, N.J.S.A. 10:5-12(a), N.J.S.A. 10:5-4, and a teacher's entitlement to *199 apply her accumulated sick leave pay for the period of disability between the birth of her child and the commencement of her maternity leave under a collective bargaining agreement. Different public policy considerations were involved there. The case has no application to the pension field. Cf. Hackensack Bd. of Ed. v. Hackensack Ed. Ass'n., 184 N.J. Super. 311 (App.Div. 1982).
Petitioner's argument founders on still another well accepted canon of statutory construction. In seeking for the meaning of a statute, courts place great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted. Peper v. Princeton Univ. Trustees, 77 N.J. 55, 69-70 (1978); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978); Castellucci v. Board of Review, 168 N.J. Super. 301, 309 (App.Div. 1979); 3 Sutherland, Statutory Construction (4 ed. 1974), § 65.05 at 173.
The testimony produced before the administrative law judge disclosed that the Board's practice was to construe the word "maternity," as used in N.J.S.A. 18A:66-8, to mean pregnancy and any resulting disability. Leave which established eligibility for purchase of retirement credits was limited by the Board to pregnancy-related disabilities or personal illness. It was explained that approximately 15,000 applications for leave due to personal illness are received each year by the Board. If the applicant certifies that the leave is for reason of personal illness, that certification is accepted as sufficient and the leave granted. Personnel presently available to the Board makes it impossible for the Board to check or verify the statements appearing on the applications. It was further explained to us that an application to purchase pension credits based on a leave for purposes of "child care" would be rejected as not authorized under the statute.
The Deputy Attorney General appearing at argument conceded that maternity leaves may have on occasion been extended and in effect became child care leaves, but it was never the intention of the Board that such incidents should occur, and it *200 was certainly not the intention of the Board to authorize or condone such a practice. It occurred, if at all, simply because the Board was unable to verify and police the many applications received with the personnel presently available to the Board at the time the applications are received.
The Deputy Attorney General also conceded that an isolated formal opinion may have been released over the years which would appear to sanction child care leaves, but assured us that such an opinion would represent an aberration or exception rather than a considered determination of the Board.
We accept this statement of the Board's interpretation and implementation of N.J.S.A. 18A:66-8 and hold that it is a reasonable one. As applied, any person who is not incapacitated from the performance of his job is barred from purchasing credit for unpaid leaves under N.J.S.A. 18A:66-8 except for official leaves of less than three months. Extending purchase rights to child care leaves would mark a sharp departure from the practice of limiting such rights to physically disabled fund members and result in an irrational discrimination among types of nondisability leaves eligible for purchase.[2]
The limitation of purchase rights for maternity leaves to women who are or who have been disabled by pregnancy under N.J.S.A. 18A:66-8, as implemented by the Board herein, does not violate the Equal Protection Clauses of the United States or the New Jersey Constitutions. Classifications on the basis of gender offend these Equal Protection Clauses only if they fail to have a substantial relationship to an important and legitimate governmental interest. Michael M. v. Superior Court of Sonoma *201 Cty., 450 U.S. 464, 467, 101 S.Ct. 1200, 1203, 67 L.Ed.2d 437 (1981); Tomarchio v. Greenwich Tp., 75 N.J. 62, 67 (1977); Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976). The limitation of purchase rights for maternity leaves to women who are disabled by reason of pregnancy substantially advances the State's interest in providing the most comprehensive pension coverage at the lowest cost and thus passes the test. Geduldig v. Aiello, 417 U.S. 484, 495-496, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974). See, also, Michael M. v. Superior Court of Sonoma Cty., supra, 450 U.S. at 473, 101 S.Ct. at 1206; Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979).
Moreover, N.J.S.A. 18A:66-8 embraces all illnesses regardless of whether they are contracted by men or women. There is no gender-based classification in the statute which could be considered violative of the Equal Protection Clauses.
As the statute is interpreted and applied, the maternity leave may not be used for child care purposes. Therefore, petitioner's contention that the interpretation of maternity leave limited to the state of pregnancy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. 2000e et seq., is without merit.
Affirmed.
NOTES
[1] The Legislature, recognizing the limitations of N.J.S.A. 18A:66-8, as written and applied, has before it Senate Bill 746 which, if enacted, would authorize the purchase of pension credits for absence of up to two years if the leave was "for the purpose of providing child care following birth of a child."
[2] Although we accept the fact that it does not have sufficient resources to independently verify that women claiming "maternity leave" are in fact pregnant or physically disabled, the Board nevertheless has the obligation to require that persons seeking purchase of pension credits establish their entitlement to do so. A mere certification of "maternity leave" by a TPAF member and her employer, without setting forth the facts of pregnancy or resultant disability, is not sufficient to permit the Board to grant the purchase request.