**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2247-19
                A-2249-19
                A-2250-19
                A-2251-19

LOUIS PEPE,

       Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

       Respondent- Respondent.

_____

CHRISTOPHER BARRELLA,

       Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

       Respondent-Respondent.

_____

JAMES BOYLE,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

RICHARD BIZZARI,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

      Argued October 20, 2021 – Decided November 22, 2021

      Before Judges Hoffman, Geiger and Susswein.

      On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS Nos: x-xxxx372, x-xxxx413; x-xxxx515; and x-xxxx843.

      Jared J. Limbach argued the cause for appellants (Donnelly Minter & Kelly, LLC, attorneys; Patrick J.

Galligan, of counsel; Jared J. Limbach and Christin D. Fontanella, on the briefs).

Christopher R. Meyer, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Porter R. Strickler, Deputy Attorney General, on the brief).

PER CURIAM

In these consolidated appeals, appellants Louis Pepe, Christopher Barrella, James Boyle, and Richard Bizzari (collectively appellants) are fire instructors who teach courses for first responders at the Morris County Public Safety Training Academy (Academy). Pepe and Barrella were hired in 1994; Boyle and Bizzari were hired in 1997. They remain on staff at the Academy. None were enrolled in the Public Employees' Retirement System (PERS) as fire instructors.

The terms of their employment required appellants to: (1) teach three-hour modules; (2) instruct a minimum of twenty sessions or sixty hours per year; (3) receive assignments from the Fire Training Coordinator or a supervisor, or by individual instructor interest; and (4) make themselves available for replacement and fill-in assignments.

Appellants generally worked from two and one-half to eight days per month. They were provided with a tentative work schedule twelve months in

advance and were required to select in advance the courses they would teach during the coming year. Appellants were not paid a fixed annual salary—they were paid per class.

In July 2001, Morris County benefits specialist Gayle Jones contacted the Division of Pension and Benefits (Division) regarding PERS eligibility for unidentified individuals whom she characterized as permanent on-call employees. Jones informed the Division that the employees had passed the fire instructor civil service examination and obtained permanent, on-call appointments. Jones indicated there was no way to estimate their annual salary because they were on-call employees. Although Jones asked the Division whether these employees could have been enrolled in PERS, the Division provided no formal response. However, a handwritten annotation on the bottom of the letter stated, "told her to bring her fire instructors in as Perm[ament] when they make $1,500.00." At that time, the minimum annual salary for PERS enrollment was $1,500. See N.J.S.A. 43:15A-7(d)(1). Appellants never made any employee contributions to PERS relating to their fire instructor positions.

In February 2006, Jones inquired about whether to enroll fire instructor Bryan Oxford in PERS since he had not worked the 120 days per year required for enrollment of on-call employees. In response, the Division informed Jones

4

that on call fire instructor's need to meet the on-call employee eligibility requirements, which included working "at least 120 days within a [twelve]-month period" and "meet[ing] the minimum annual salary" threshold. See N.J.A.C. 17:2-2.3(a)(6); N.J.A.C. 17:2-2.10(a)(1).

On December 11, 2008, Pepe contacted the Division requesting an audit and clarification concerning his PERS enrollment eligibility. By letter dated January 10, 2009, Barrella contacted the Division requesting retroactive enrollment in PERS from the date he began his employment as a fire instructor.

In January 2009, Jones informed the Division that the fire instructors had "no regular schedule" and taught "when there [was] sufficient demand for their particular subject." In July 2009, the Division requested "a monthly breakdown reflecting the exact dates they worked" for each year listed, and that the monthly breakdown "include the total salary earned for each month." Jones provided the requested information and provided a description of the fire instructors' work schedules.

The Division found that the fire instructors were employed on an "as needed" basis and their employment does not follow a regular predictable work schedule. "Therefore, the enrollment criteria for these employees [are] the same

as on-call employees." The Division advised Jones of the following requirements to enroll in PERS as on-call, as needed employees:

> At employing locations where the regular work year is 12 months long, the employee must work at least 120 days within a 12[-]month period . . . before becoming eligible for enrollment. The date of eligibility for enrollment for an on-call employee would be the first day of the [thirteenth] month after the commencement of the 120[-]day period. The current annual minimum salary required for enrollment eligibility is now $7,500 and it will increase to $7,700 in 2010.

On the same day, the Division informed Pepe that he worked as a fire instructor "on an 'as needed' basis and [his] employment [did] not follow a regular schedule." It further noted that "while [Pepe] met the minimum annual salary requirements since 2004, [he had] not met the minimum number of days required for enrollment in PERS." The Division sent a similar letter to Barrella.

On November 1, 2016, appellants' attorney wrote to Morris County inquiring about appellants' PERS eligibility as fire instructors. He noted that appellants "may not have been enrolled in PERS because they were categorized as on-call employees." Counsel explained that appellants were "part-time" employees who began working "prior to July 1, 2007" and "satisfied the earning threshold under the PERS eligibility requirements." Counsel stated that "other County employees, hired at the same time and for the same position, were placed

A-2247-19

into PERS." After receiving no response, counsel sent two follow-up letters inquiring about appellants' PERS eligibility.

On July 10, 2017, counsel wrote to the Division requesting clarification as to appellants' "on-call" status and requesting retroactive enrollment in PERS. On November 6, 2017, the Division requested employment verification forms from Morris County for each year the fire instructors worked in that position. On July 26, 2018, the Division received the information requested. At the Division's request, appellants provided further information.

On October 11, 2018, the Division advised counsel that appellants were not eligible for retroactive enrollment in PERS. The Division explained that Pepe and Barrella were ineligible for enrollment in PERS from January 1, 1995, to September 11, 2009, and Boyle and Bizzari were ineligible from December 14, 1996, to June 26, 2009.

Appellants contend they were hired as permanent, part-time fire instructors and served for years with the expectation they would be enrolled in PERS once they reached the minimum annual salary requirement. That did not occur because the Division classified appellants as "on-call" employees and denied their request for retroactive enrollment in PERS because appellants did not occupy permanent, regularly budgeted positions at the Academy.

7

Appellants further contend the Division misinterpreted applicable statutes and regulations by incorrectly classifying them as "on-call" employees, thereby rendering them ineligible for PERS. They appealed the Division's denial of membership in PERS, seeking an "adjudicatory hearing" as contested cases in the Office of Administrative Law (OAL) pursuant to N.J.S.A. 43:15A-7.3.

On August 29, 2019, the Board of Trustees (Board) of PERS denied appellants' requests for retroactive PERS enrollment, as well as their requests for adjudicatory hearings. The Board's decisions rested, in large part, upon a July 2001 exchange between the Division and Jones. The decision also referenced an analysis conducted in 2009 in which the Division determined that fire instructors "were employed on an 'as needed' basis and their employment does not follow a regular predictable work schedule." Based on this information, the Board analyzed the Appellants' PERS eligibility exclusively under the regulations for "on-call" employees, N.J.A.C. 17:2-2.3(a)(6) and N.J.A.C. 17:2-2.10(a)(1). The Board determined that appellants did not meet the enrollment criteria for minimum annual salary, average number of days worked per month, or hours worked per week. The Board also determined that appellants' employment was not consistent with that of a regular part-time employee with a continuous regular work schedule.

8

Appellants appealed the Board's determinations and again requested an administrative hearing. Appellants proffered evidence in support of their claim that they had been hired as "part-time" employees rather than "on-call" employees, and that the fire instructor position was "permanent" rather than "temporary." They argued that an evidentiary hearing was necessary to resolve a factual issue related to their classification because other Morris County fire instructors were enrolled in PERS.

On December 11, 2019, the Board determined there were no material facts in dispute and directed the Board Secretary, in consultation with the Attorney General's Office, to prepare Findings of Fact and Conclusions of Law, which were presented and approved by the Board on January 15, 2019. The next day, the Board issued four final administrative determinations denying appellants' applications for retroactive enrollment in PERS.

The Board determined the fire instructor positions were "on-call" due to: (a) the employment verification forms filed by Morris County's that indicated appellants were "on call" part-time instructors; (b) the position's work schedule being sporadic and unpredictable; (c) the limited number of days worked per year and hours worked per week; and (d) the lack of continuous and regular employment as established by attendance and payroll sheets.

After reviewing appellants' employment records, the Board found they failed to meet the minimum annual salary requirement for several years, worked less than 120 days per year, and worked less than 32 hours per week.[1] In reaching those conclusions, the Board made the following individual findings.

Pepe began working as a fire instructor at the Academy in 1994. He first requested enrollment in PERS in December 2008 and sought retroactive enrollment starting in 2004, the first year that he met the $1,500 salary threshold for PERS eligibility. See Table 1 attached hereto. He also did not work at least thirty-two hours per week. Ibid. In November 2009, the Division denied his request for enrollment after determining that he failed to meet the 120 days worked requirement. Pepe enrolled in PERS on December 1, 2011, when he commenced employment as an Assistant Fire Marshall.

In April 2015, Pepe applied to purchase uncredited "on-call" service from January 2003 through December 2011. In response to the Division's informational request, Morris County submitted an employment form that indicated Pepe was an "on-call" part-time, fire instructor during that period. The Division denied his request after determining once again that his position as a

---

[1] Effective May 21, 2010, PERS membership required local government employees to work at least thirty-two hours per week. L. 2010, c. 1.

fire instructor was not eligible for PERS enrollment because he had not worked the requisite number of days per year. The Division also determined that he did not qualify for PERS enrollment "because he was employed less than thirty-two hours per week."

The Board found his "sporadic work schedule to be temporary in nature." The records showed that Pepe "averaged, at best, [five] days per month and he did not work for several weeks or, on some occasions, for several months at a time." In addition, "from 1994 to 2009, he average[d] less than [two and one-half] days per month," and his salary decreased and increased by as much as [ten to twenty percent] from year to year.

Barrella began working as a fire instructor in 1994. He first inquired about PERS enrollment for his instructor position in 2009, but the Division denied his request. Barrella requested retroactive enrollment starting in 1994. The Division determined he was ineligible because he failed to meet the 120-day per year requirement and failed to meet the salary threshold requirement for 1995, 2003, and 2005. See Table 2 attached hereto. He ultimately enrolled in PERS on June 1, 2008, through his employment with Victory Gardens Borough.

In 2017, Barrella contacted the Division seeking reconsideration of the Division's previous determination. The Division again denied his request and

further noted that his instructor position prior to 2010 was not eligible for PERS service credit because he had not worked at least ten days per month in any year. In addition, the Division explained that Barrella was not eligible for PERS as a fire instructor after 2010 because he worked less than thirty-two hours per week. Barrella then appealed the Division's determination to the Board.

The Board determined that Barrella did not meet the eligibility criteria for PERS enrollment because "he [did] not have continuous, regularly scheduled part-time employment." The Board concluded he worked on an as needed basis because of his unpredictable work schedule, the limited number of days worked per year, and his employer's classification of the fire instructor position as an "on-call" position. Barrella averaged, "at best, [eight] days per month in one year, and from 1994 through 2009, he averaged less than [two and one-half] days per month." In addition, Barrella "did not work for several weeks or, on some occasions, for several months at a time." His salary varied from year to year and, in some instances, increased as much as 400 percent in one year and decreased 30 percent in other years. The Board also found that, after May 2010, Barrella worked less than thirty-two hours per week as a fire instructor.

Boyle requested retroactive enrollment in PERS starting in 1998. He started working as a fire instructor in 1997 and exceeded the salary threshold

12

requirement for the first time in 1998. See Table 3 attached hereto. Boyle failed, however, to meet the salary threshold requirement in 2001, 2004, 2005, 2009, and 2010. Ibid. The Division also determined that Boyle failed to meet the 120-day per year requirement.

In 2017, Boyle sought reconsideration of the Division's determination, but the Division again determined that Boyle was not eligible for PERS enrollment because "he did not work for at least [ten] days per month in any year. After 2010, [his] service was not eligible for purchase because he was employed less than [thirty-two] hours per week."

Boyle's employment records revealed that he "averaged, at best, [six] days per month in one year, and from 1997 through 2009, he averaged approximately [two and one-half] days per month." In addition, he "did not work for several weeks or, on some occasions, for several months at a time." Moreover, Boyle's salary varied from year to year by as much as 500 percent in one year and decreasing by 50 percent in another. He "failed to meet the earnings threshold for two consecutive years, in both 2004-2005 and 2009-2010, . . . [and] a break in service of two years or more would preclude his purchase of the previous periods of service in which he did meet the earnings threshold." Ibid. Lastly,

after 2010, Boyle failed to work the required number of hours per week for PERS enrollment.

Bizzari requested membership in PERS retroactive to 2004.  He started working as a fire instructor in 1997 but did not exceed the salary threshold requirement for PERS until 2002.  See Table 4 attached hereto.  He then failed to meet the salary threshold requirement in 2003 and 2004.  Ibid.  Bizzari failed to meet the 120-day per year requirement and the minimum salary requirement from 1997 through 2001 and from 2003 through 2004.  See ibid.

In 2017, Bizzari sought reconsideration of the Division's determination, but the Division again determined that Bizzari was not eligible for PERS enrollment.  Bizzari's "service prior to 2010 was not eligible for PERS service credit [because] he did not work for at least [ten] days per month in any year.  After 2010, [his] service was not eligible for purchase because he was employed less than [thirty-two] hours per week."

Bizzari's employment records revealed that he "averaged, at best, [three] days per month in one year, and from 1997 through 2009[,] he averaged less than [one and one-half] days per month."  Bizzari also "did not work for several weeks or, on some occasions, for several months at a time."  Additionally, Bizzari's salary varied from year to year, "in some instances increasing as much

14

as 300 [to] 400 percent in one year, while decreasing by 50 [to] 75 percent in other years." See Table 3.

These appeals followed and were consolidated. Appellants challenge the Board's final administrative determinations and seek an order compelling retroactive enrollment in PERS. Appellants argue:

> POINT ONE
>
> THE DIVISION'S INTERPRETATION OF THE GOVERNING STATUTES AND REGULATIONS IS A LEGAL ISSUE THAT MUST BE REVIEWED DE NOVO.
>
> POINT TWO
>
> APPELLANTS ARE ELIGIBLE FOR RETROACTIVE PERS ENROLLMENT BASED ON THEIR STATUS AS PERMANENT, PART-TIME EMPLOYEES.
>
> > A. The Division's Interpretation of N.J.A.C. 17:2-2.3(A)(6) is Inaccurate Because Appellants' Part-Time Fire Instructor Position is Regularly Budgeted by the County.
> >
> > B. As Permanent Employees Occupying Regularly Budgeted Positions, Appellants Have Long Been Eligible for Enrollment in PERS.

After careful review of the record and the applicable statutes, regulations, and case law, we find no merit in these arguments and affirm.

Our scope of review of an administrative agency's final determination is limited.  In re Herrmann, 192 N.J. 19, 27 (2007).  "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Id. at 27-28.  The burden of proving a decision was arbitrary, capricious, or unreasonable is on the party challenging the agency action. Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

When reviewing an agency decision, we examine (1) whether the agency action violated "express or implied legislative policies," (2) whether there is substantial evidence in the record to support the agency's decision, and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).  Where an agency's decision satisfies these criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'"  Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J.

1, 10 (2009) (quoting <u>Greenwood v. State Police Training Ctr.</u>, 127 N.J. 500, 513 (1992)).

"[T]he statutes governing the retirement systems make clear that, although a person eligible for benefits is entitled to a liberal interpretation of a pension statute, 'eligibility [itself] is not to be liberally permitted.'" <u>In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10</u>, 454 N.J. Super. 386, 399 (App. Div. 2018) (second alteration in original) (quoting <u>Smith v. Dep't of Treasury, Div. of Pensions & Benefits</u>, 390 N.J. Super. 209, 213 (App. Div. 2007)). "Instead, . . . the applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" <u>Smith</u>, 390 N.J. Super. at 213 (alterations in original) (quoting <u>Chaleff v. Teachers' Pension & Annuity Fund</u>, 188 N.J. Super. 194, 197 (App. Div. 1983)). <u>Accord</u> <u>DiMaria v. Bd. of Trs., Pub. Emps.' Ret. Sys.</u>, 225 N.J. Super. 341, 354 (App. Div. 1988). The burden to establish pension eligibility is on the applicant. <u>Patterson v. Bd. of Trs., State Police Ret. Sys.</u>, 194 N.J. 29, 50-51 (2008).

With these principles in mind, we analyze whether the Board's final administrative determinations were supported by substantial evidence in the

record or were arbitrary, capricious, or unreasonable. Appellants did not satisfy that burden.

N.J.S.A. 43:15A-7 governs PERS enrollment eligibility. "Before or on November 1, 2008, no person in employment, office or position, for which the annual salary or remuneration is fixed at less than $1,500.00, shall be eligible to become a member of the retirement system." N.J.S.A. 43:15A-7(d)(1). "After November 1, 2008, a person who was a member of the retirement system on that date and continuously thereafter shall be eligible to be a member of the retirement system in employment, office or position, for which the annual salary or remuneration is fixed at $1,500 or more." N.J.S.A. 43:15A-7(d)(2). Following the enactment of L. 2010, c. 1, local government employees must work thirty-two hours per week to become eligible for enrollment in PERS. N.J.A.C. 17:2-2.1(b)(3).

Temporary employees with at least one year's continuous service also qualify for enrollment. N.J.S.A. 43:15A-7(b). However, "temporary employment that is not continuous[]" does not meet the eligibility requirement for enrollment in PERS. N.J.A.C. 17:2-2.3(a)(6). "Any person not in the career, senior executive, and unclassified service, or a regular budgeted position, who is employed on an on-call basis and works on average less than [ten] days a

month throughout the regular work year of the employer" is ineligible for enrollment in PERS. Ibid.

"On-call employees have unpredictable work schedules and their employment is usually temporary in nature." N.J.A.C. 17:2-2.10(a). Although "on-call" employees are "eligible to enroll in the PERS at the beginning of the [thirteenth] month of continuous employment," they must still meet "all other eligibility requirements[,] . . . including the achievement of a fixed minimum number of regular hours of [thirty-two] hours per week, pursuant to the provisions of N.J.S.A. 43:15A-7." Ibid. In addition, "on-call" employees "must work at least 120 days within a [twelve]-month period (10 days per month x 12 months) before becoming eligible for enrollment" in PERS. N.J.A.C. 17:2-2.10(a)(1).

Appellants argue that they were permanent, part-time employees and should not have been classified as "temporary" or "on-call" employees. Appellants posit employees occupying "regularly budgeted positions," such as themselves, need not meet the ten-day per-month requirement applicable to on-call employees, who are generally ineligible for PERS enrollment. Appellants note that the County's Fire Instructor Agreement expressly refers to their fire instructor position as "part-time" employees and that none of the documents

associated with the hiring process suggested that the position was classified as "temporary" or "on-call."

Appellants further argue they were permanent employees because "the Division expressly instructed the County to enroll the fire instructors as permanent employees once they met the [$1500] annual salary threshold." Appellants also note that they were classified as permanent employees by Morris County and the Municipal Personnel System because they passed the NJDOP civil service examination. Moreover, appellants contend they were not "on-call" employees despite having an unpredictable work schedule because appellants selected their schedule several months in advance. Appellants claim that since they are permanent employees, they became eligible for enrollment in PERS when they met the minimum annual salary requirement of $1,500 under N.J.S.A. 43:15A-7(d)(1) and N.J.A.C. 17:2-2.1(b)(1).

We are unpersuaded by these arguments. The record reveals that appellants were not "regularly budgeted" employees because they had no fixed schedule, salary, or remuneration. Jones explained she was unable to calculate an annual salary for fire instructors because she did not know how many hours they would work in any given year. Moreover, as we have noted, appellants' employment only required them to instruct a minimum of twenty sessions or

20

sixty hours per year. Appellants were not paid a fixed annual salary but were instead paid per class or assignment.

In addition, appellants are properly considered "on-call" employees for purposes of N.J.A.C. 17:2-2.3(a)(6) or N.J.A.C. 17:2-2.10(a)(1). Their work schedules varied from year to year and were not predictable. They did not work at least 32 hours per week or 120 days per year. See Tables 1-4. Moreover, in certain years they earned less than $1,500. Ibid.

Notably, even though appellants were required to instruct a minimum of 20 sessions or 60 hours per year, these requirements in no way ensured that appellants would meet the 120-day per year requirement or the minimum salary threshold requirements under N.J.S.A. 43:15A-7 and N.J.A.C. 17:2-2.10(a). In fact, they only worked a few days per month, failed to work 120 days per year, and in certain years failed to meet the $1,500 minimum annual salary requirement. See Tables 1-4.

Therefore, notwithstanding appellants' characterization of their position as "permanent" or "part-time," they are ineligible for enrollment in PERS because they did not hold regularly budgeted positions, they had unpredictable work schedules, and they worked less than ten days per month. See N.J.A.C. 17:2-2.3(a)(6). Moreover, after 2010, appellants were also ineligible for

enrollment because they worked less than thirty-two hours per week. <u>See</u> N.J.S.A. 43:15A-7(d)(4); N.J.A.C. 17:2-2.1(b)(3). Therefore, the Board's determinations are consonant with the plain meaning of the applicable statutes and regulations.

We next turn to the question of whether the Board's motion for summary decision should have been denied because there was a genuine issue of material fact regarding appellants' classification as on-call employees, since other similarly situated Morris County fire instructors were enrolled in PERS.

> A summary decision may be made if the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b). Once the moving party presents sufficient evidence in support of the motion, the opposing party must proffer affidavits setting "forth specific facts showing that there is a genuine issue which can only be determined in an evidentiary proceeding." <u>Ibid.</u> This standard is substantially the same as that governing a motion under <u>Rule</u> 4:46-2 for summary judgment in civil litigation. <u>Frank v. Ivy Club</u>, 228 N.J. Super. 40, 62 (App. Div. 1988), <u>rev'd on unrelated grounds</u>, 120 N.J. 73 (1990). Under this standard, the court or agency must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." <u>Brill v. Guardian Life Ins. Co.</u>, 142 N.J. 520, 523 (1995). "If there exists a single, unavoidable

> resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." Id. at 540.
>
> [Contini v. Bd. of Educ. of Newark, 286 N.J. Super. 106, 121-22 (App. Div. 1995).]

The controlling facts as to all four appellants were not in dispute. The annual salary, number of hours worked per week, number of days worked per year, and the manner in which appellants' work was scheduled, were not contested. Applying the PERS enrollment criteria to those established facts did not require an evidentiary hearing. Accordingly, summary decision was appropriate.

Moreover, appellants' reliance on the PERS enrollment of other fire instructors is misplaced. Appellants are only appealing the Board's determination of their eligibility for enrollment. "[O]nly the [agency rulings] or parts thereof designated in the notice of appeal are subject to the appellate process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1(e)(1) (2022); see also 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004) (same) (citing Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.), aff'd o.b., 138 N.J. 41 (1994)). Because the other fire instructors are not parties to these consolidated appeals and their alleged enrollment in PERS is not before us, we decline to

address it.  <u>Belmont Condo. Ass'n v. Geibel</u>, 432 N.J. Super. 52, 98 (App. Div. 2013).  In any event, eligibility for PERS enrollment is highly fact sensitive.

In sum, we discern no basis for disturbing the Board's decisions.  Applying appropriate deference to the Board's "interpretation and implementation of its rules enforcing the statutes for which it is responsible," <u>In re Freshwater Wetlands Prot. Act Rules</u>, 180 N.J. 478, 489 (2002), the Board's decisions, which were based on undisputed evidence in the record, were not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

TABLE ONE

LOUIS PEPE

Morris County personnel records reveal the number of days worked by Pepe and the salary he earned as a fire instructor from 1994 through 2011:

| YEAR | Days Worked | Salary |
|------|-------------|--------|
| 1994 | (not avail.) | $779.00 |
| 1995 | 22 days | $1,157.00 |
| 1996 | 13 days | $767.00 |
| 1997 | 17 days | $885.76 |
| 1998 | 9 days | $374.92 |
| 1999 | 4 days | $288.12 |
| 2000 | 0 days | $0.00 |
| 2001 | 11 days | $809.44 |
| 2002 | 14 days | $1,200.62 |
| 2003 | 15 days | $(not avail.) |
| 2004 | 53 days | $4,883.90 |
| 2005 | 54 days | $4,252.80 |
| 2006 | 52 days | $6,120.91 |
| 2007 | 63 days | $7,478.42 |
| 2008 | 51 days | $7,376.39 |
| 2009 | 51 days | $9,016.36 |
| 2010 | (not avail.) | $7,376.39 |
| 2011 | (not avail.) | $9,016.36 |

25

TABLE TWO

CHRISTOPHER BARRELLA

Morris County personnel records reveal the number of days worked by

Barrella and the salary he earned as a fire instructor from 1994 through 2010:

| YEAR | DAYS WORKED | SALARY |
|------|-------------|--------|
| 1994 | (not avail.) | $1,677.00 |
| 1995 | 17 days | $1,001.00 |
| 1996 | 32 days | $1,885.00 |
| 1997 | 31 days | $2,300.81 |
| 1998 | 24 days | $1,726.14 |
| 1999 | 25 days | $2,052.65 |
| 2000 | 26 days | $1,962.90 |
| 2001 | 16 days | $1,705.00 |
| 2002 | 14 days | $1,808.48 |
| 2003 | 5 days | $421.10 |
| 2004 | 16 days | $2,109.46 |
| 2005 | 12 days | $1,404.35 |
| 2006 | 34 days | $6,665.89 |
| 2007 | 54 days | $9,618.09 |
| 2008 | 79 days | $11,845.72 |
| 2009 | 54 days | $10,946.60 |
| 2010 | (not avail.) | $7,025.39 |

26

A-2247-19

TABLE THREE

JAMES BOYLE

Morris County personnel records reveal the number of days worked by Boyle and the salary he earned as a fire instructor from 1994 through 2010:

| YEAR | DAYS WORKED | SALARY |
|------|-------------|--------|
| 1997 | 17 days | $749.84 |
| 1998 | 35 days | $2,045.16 |
| 1999 | 35 days | $2,112.11 |
| 2000 | 33 days | $2,177.89 |
| 2001 | 23 days | $1,370.98 |
| 2002 | 27 days | $1,663.74 |
| 2003 | 32 days | $2,518.92 |
| 2004 | 23 days | $1,474.98 |
| 2005 | 11 days | $872.98 |
| 2006 | 57 days | $6,540.10 |
| 2007 | 48 days | $6,284.50 |
| 2008 | 69 days | $6,912.47 |
| 2009 | 5 days | $1,336.00 |
| 2010 | (not avail.) | $824.40 |

A-2247-19

TABLE FOUR

RICHARD BIZZARI

Morris County personnel records reveal the number of days worked by Bizzarri and the salary he earned as a fire instructor from 1994 through 2010:

| YEAR | DAYS WORKED | SALARY |
|------|-------------|--------|
| 1997 | 14 days | $749.84 |
| 1998 | 23 days | $1,263.00 |
| 1999 | 29 days | $1,375.00 |
| 2000 | 15 days | $880.23 |
| 2001 | 16 days | $984.00 |
| 2002 | 20 days | $1,638.00 |
| 2003 | 10 days | $937.00 |
| 2004 | 13 days | $1,062.00 |
| 2005 | 18 days | $1,703.00 |
| 2006 | 38 days | $4,253.00 |
| 2007 | 29 days | $3,497.00 |
| 2008 | 11 days | $1,014.00 |
| 2009 | 12 days | $1,578.00 |
| 2010 | (not avail) | $7,025.39 |

A-2247-19