**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0195-22

MATTHEW TROTTER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

> Argued July 9, 2024 – Decided July 16, 2024
>
> Before Judges Gilson and Paganelli.
>
> On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. xx9327.
>
> Janis A. Eisl argued the cause for appellant (Szaferman Lakind Blumstein and Blader, PC, attorneys; Samuel M. Gaylord, on the brief).
>
> Leslie A. Parikh argued the cause for respondent (Nels J. Lauritzen, Director of Legal Affairs, attorney; Juliana C. DeAngelis, Legal Counsel, on the brief).

PER CURIAM

Matthew Trotter appeals from an August 9, 2022 final agency decision of the Board of Trustees, Police and Firemen's Retirement System (Board) denying his application for accidental disability retirement benefits (ADRB). For the reasons that follow, we affirm.

We glean the facts and procedural history from the record. In early 2020, the Gloucester Township Police Department/Gloucester Township (the Employer) filed three Preliminary Notices of Disciplinary Action (PNDA) against Trotter. He was charged with various regulatory violations and in each PNDA, the Employer sought his removal from employment.

Trotter and the Employer executed a Settlement Agreement and General Release (Agreement) because they "resolve[d] the disposition of the [PNDAs] in a summary fashion without the necessity for a hearing, and in order to avoid the uncertainty, expense and burden of litigation, and to resolve all matters and proceedings that might arise between [Trotter] and the Employer as a result of the . . . charges."

In part, the Agreement provided:

> 2. [Trotter] shall immediately submit a notice . . . to Employer whereby he [indicates he is] leaving the police force in order to apply for a retirement based on his medical disability. [Trotter] further covenants and

2

agrees that his relationship with [the Employer] has been permanently and irrevocably severed, and that he will not seek employment or reinstatement with, apply for future employment or otherwise obtain employment, apply for any position or seek appointment to any position, with the [Employer], or any board or authority of the [Employer] at any time in the future with the exception of a reinstatement ordered pursuant to the provisions of N.J.S.A. 43:16A-8(2). If that provision is invoked by the New Jersey Division of Pensions [(Division)], [Trotter] agrees to reimburse [the Employer] any and all monies paid to him for unpaid sick and/or vacation time including interest and attorney's fees and further agrees not to object to the resurrection of any disciplinary matters contemplated prior to his application for pension benefits . . . .

In the time between the Employer's filing of the PNDAs and the parties' execution of the Agreement, Trotter filed an application for ADRB with the Division. He claimed he suffered from PTSD resulting from a hostage situation, that occurred before the filing of the PNDAs, during which he was threatened with a knife.

The Disability Review Section of the Division determined Trotter was ineligible to apply for ADRB. Thereafter, the Board denied Trotter's request to apply for ADRB. Trotter appealed the Board's decision. The matter was declared a contested case, and it was transmitted to the Office of Administrative Law. Trotter and the Employer filed cross-motions for summary decision.

3

In reaching her decision to deny Trotter's motion and grant the Employer's cross-motion for summary decision, the Administrative Law judge (ALJ) recognized the "[r]elevant regulations and statutes in th[e] matter [we]re N.J.A.C. 17:1-6.4 and N.J.S.A. 43:16A-8(2)." The judge concluded: (1) Trotter "covenant[ed] and agree[d] that his relationship with [the Employer was] permanently and irrevocably severed," and therefore he was ineligible to apply for ADRB; (2) "it [wa]s clear that the overall intent of the Agreement was to resolve the three PNDAs that had been levied against" Trotter; and (3) Trotter's "separation from employment was not solely due to his alleged disability." The Board adopted the ALJ's decision.

On appeal, Trotter contends the Board erred by: (1) misreading the Agreement to prohibit him from ever returning to work, as required under N.J.S.A. 43:16A-8(2), because the Agreement "did provide for a mechanism which would, in the event [his] condition were to improve, allow him to return to his employment"; and (2) concluding it was the Agreement reached due to the pending PNDAs that caused him to voluntarily terminate service rather than his disability.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re

Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). We examine:

> (1) whether the agency's action violates express or implied legislative polices, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant facts.
>
> [Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Carter, 191 N.J. 474, 482 (2007)).]

"In assessing those criteria, a court must be mindful of, and deferential to, the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We do not "substitute [our] own judgment for the agency's." Ibid. (quoting Carter, 191 N.J. at 483).

A-0195-22

However, we are "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Allstars, 234 N.J. at 158 (alteration in original) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). "[I]f an agency's statutory interpretation is contrary to the statutory language, or if the agency's interpretation undermines the Legislature's intent, no deference is required." N.J. Div. of Youth and Fam. Servs. v. T.B., 207 N.J. 294, 302 (2011) (alteration in original) (quoting In re N.J. Tpk. Auth. v. Am. Fed'n of State, Cty. & Mun. Emps., Council 73, 150 N.J. 331, 351 (1997)). In Geller v. Department of Treasury, 53 N.J. 591, 598 (1969), the New Jersey Supreme Court held "statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby." However,

> an employee is entitled to the liberality spoken of in Geller when eligible for benefits, but eligibility is not to be liberally permitted. Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to "obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und."
>
> [Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007) (alteration in original) (quoting Chaleff v. Tchrs.' Pensions & Annuity Fund Trs., 188 N.J. Super. 194, 107 (App. Div. 1983)).]

The party challenging the final administrative action has the burden to demonstrate grounds for reversal. Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)). Applying these well-established principles, Trotter failed to meet his burden.

Trotter is ineligible for ADRB under N.J.S.A. 43:16A-8(2). Under the statute, assuming Trotter could establish a qualifying disability, he would be required to "report for duty" if a "medical examination" disclosed his disability had "vanished or ha[d] materially diminished." N.J.S.A. 43:16A-8(2). However, in the Agreement, Trotter "covenant[ed] and agree[d] that his relationship with [the Employer] ha[d] been permanently and irrevocably severed." Therefore, even if his alleged disability improved, he could not report for duty. Trotter's permanent inability to return to duty—effectuated by his deliberate and irrevocable resignation—was fatal to his application. See Cardinale v. Bd. of Trs., Police and Firemen's Ret. Sys., 458 N.J. Super. 260, 270 (App. Div. 2019).

In Cardinale, we explained, "the statute authorize[d] the Board to discontinue disability benefits only" when "the beneficiary fail[ed] to submit to [a] medical examination or fail[ed] to return to duty." Id. at 271 (citing N.J.S.A. 43:16A-8(2)). Thus, we "conclude[d] that when a . . . member separate[d] from

7

employment by deliberately and irrevocably resigning from active duty to settle pending disciplinary charges . . . that person is ineligible . . . because he or she can never return to work as contemplated by the unique disability retirement statutory framework." Id. at 272.

Trotter argues this matter is distinguishable from Cardinale because: (1) he separated from his position because of his disability; and (2) the Agreement provided a mechanism for him to return to employment. We conclude these arguments have no merit.

First, the Board's determination that Trotter voluntarily terminated employment because of the pending PNDAs, and not a disability, is fully supported in the record. Thus, we are satisfied the termination was not based on a disability.

Second, Cardinale controls here because Trotter agreed to "permanently and irrevocably sever[]" his relationship with the Employer. The reference in the Agreement to N.J.S.A. 43:16A-8(2) is a thinly veiled attempt to allow Trotter to apply for ADRB even though he was leaving his employment because of the PNDAs. The Board concluded that the provision did not allow Trotter to return to work for the Employer. Instead, his return to employment was controlled by

the Agreement under which he forever terminated his relationship with the Employer. We discern no error in the Board's interpretation of the Agreement.

In addition, for two reasons, Trotter is ineligible for ADRB under N.J.A.C. 17:1-6.4. The record sufficiently supported the Board's findings that Trotter left employment to avoid the pending PNDAs and that the parties executed the Agreement to resolve the pending PNDAs. The ALJ noted Trotter did "not argue that the disciplinary charges flowed from his disability." Therefore, Trotter could not establish that his alleged "disability [was] the reason [he] left employment," N.J.A.C. 17:1-6.4(a); nor that his voluntary termination of service, was not the result of the Agreement "reached due to pending administrative . . . charges," N.J.A.C. 17:1-6.4(b).

To the extent we have not addressed any of Trotter's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-0195-22