**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1672-21

MICHAEL MOSCA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted February 12, 2024 – Decided February 29, 2024

Before Judges Mawla and Chase.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx3755.

Castellani Law Firm, LLC, attorneys for appellant (David Rock Castellani, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sara M. Gregory, Assistant Attorney General, of counsel; Jeffrey David Padgett, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Michael Mosca appeals from a January 20, 2022 final agency determination of the Board of Trustees ("Board") of the Public Employees' Retirement System ("PERS") denying him pension participation and service credit from 2008 to 2015. The Board, in rejecting a contrary decision issued by an Administrative Law Judge ("ALJ"), concluded Mosca was not a municipal employee for those years following the adoption of N.J.S.A. 43:15A-7.2 when he served as municipal prosecutor for the City of Ventnor. Rather, the Board held Mosca was serving pursuant to a public services contract and his engagement was not eligible for PERS credit. We affirm.

I.

We recount the pertinent facts as developed in the administrative proceedings. No testimony was taken in those proceedings, as the parties cross-moved for summary disposition.

Mosca first enrolled in PERS in 1992 when working as an assistant prosecutor in Atlantic City, a job he held until 2002. In 1996, Mosca served as housing prosecutor for Ventnor under a professional services contract. This contract was awarded under the Local Public Contracts Law, N.J.S.A. 40A:11-1 to -60 ("LPCL") and paid by voucher from Ventnor's vendor budget. After

2

Ventnor's municipal prosecutor resigned, then-mayor, Timothy Kreischer, offered the position to Mosca. When Mosca accepted, the roles of municipal prosecutor and housing prosecutor were consolidated.

Mosca served continually in the municipal prosecutor position until his resignation in 2016, and Ventnor renewed his appointment during the first reorganization meeting of each year. He was paid biweekly as a W-2 employee from Ventnor's "Wages and Salary" budget, and Ventnor withheld the appropriate payroll deductions. Pension contributions were also withheld from his paycheck.

In 2007, the Legislature passed several pension reform measures under P.L. 2007, c. 92 ("Chapter 92"). Among other things, the statute excluded from PERS membership persons who performed professional services under contracts awarded pursuant to the LPCL once their current contract expired.

In response to these initiatives, Kreischer, along with then-City Solicitor John Abbott, Esq., and then-Chief Financial Officer ("CFO") Barry Ludy, reviewed Ventnor's staff and removed from PERS enrollment all professionals they believed no longer qualified. For example, Abbott's own position was deemed no longer eligible for enrollment, along with that of the City Engineer,

City Planner, Bond Counsel, and others. However, Ventnor kept Mosca in the PERS system.

In May 2012, Michael Bagnell was elected mayor of Ventnor. Bagnell negotiated all professional services contracts awarded under LPCL, but he never negotiated with Mosca. When Janice Callaghan became City Clerk, she discussed Mosca's employment with Bagnell and requested additional documentation of his employment status for Mosca's employee file. In August 2014, at Bagnell's request, Ventnor City Administrator, Thomas Russo, issued a memorandum ("Russo Memorandum") to Callaghan stating it was his belief Mosca was a Ventnor employee.

Throughout both the Kreischer and Bagnell administrations, the Ventnor City Board of Commissioners passed several annual resolutions concerning Mosca. On December 18, 2008, they passed Resolution 154, titled "REAPPOINTMENT OF MICHAEL MOSCA, ESQ. AS PROSECUTOR OF THE CITY OF VENTNOR CITY" for 2009. The resolution acknowledged that LPCL requires awards to be publicly advertised. It continued, "The Contract is awarded without competitive bidding as a 'Professional Service' under the provisions of the Local Public Contracts Law because the law permits the

waiving of competitive bids under [N.J.S.A.] 40A:5-11." Substantially similar resolutions were passed for 2010 through 2015.

Public notices of the resolutions were also published in The Press of Atlantic City for 2009 through 2015. The notices also explicitly referenced the LPCL, stated the contracts were available for inspection with the City Clerk, and named Mosca alongside others awarded contracts for such services as municipal solicitor, municipal auditor, risk management consultant, public defender, and municipal engineer. The publications listed the amount awarded to Mosca as "$31,000," and later, "Not to Exceed $31,000[.]"

Meanwhile, in 2012, the Office of the State Comptroller reported many professional services contractors continued to improperly participate in PERS, in violation of the Chapter 92 mandates. In response, the Division of Pension and Benefits audited many local employers, including Ventnor.

In a September 2015 letter from the Pension Fraud and Abuse Unit ("PFAU"), Mosca was informed he would be removed from PERS eligibility retroactive to January 1, 2008. In a letter sent the next day, the PFAU notified Mosca that they determined he was "an independent contractor rather than an employee," and cited the following as support for that conclusion: Mosca's

5

purported maintenance of his own law practice with full-time, regular business hours of operation; resolutions adopted annually; and public notices of the same.

Mosca appealed from the PFAU's determination. He provided them with an analysis of his employment under the IRS Employee Test ("twenty-factor test") for independent contractors as applied to his employment with Ventnor, which was similar to the conclusions in the Russo Memorandum. In 2016, the PFAU's Acting Director replied and reiterated that Mosca maintained his own law practice, that Ventnor had passed and published annual resolutions appointing him under the LPCL, and that the twenty-factor analysis was unnecessary because the PFAU had already determined Mosca provided professional services as an independent contractor under an LPCL contract.

As such, the Board maintained its determination that Mosca was ineligible for PERS enrollment, retroactive to January 1, 2008. The Board acknowledged that while Ventnor's clerk could not produce any written agreements, "[t]he absence of a formal written contract does not negate the existence of a contract."

Mosca appealed from the Board's initial determination, and the matter was transferred as a contested case to the New Jersey Office of Administrative Law. The parties cross-moved to proceed summarily pursuant to N.J.A.C. 1:1-12.5.

In support of his motion, Mosca submitted: a certification by Kreischer denying the existence of LPCL contracts and confirming Mosca's status as a regular employee; the Russo Memorandum; a certification by Bagnell stating he negotiated all professional services contracts when serving as Mayor and never negotiated one with Mosca; Mosca's own certification that no LPCL contracts were presented to or agreed to by him and that he continued as municipal prosecutor because he was in PERS; a certification by Abbott that he personally assisted then-Mayor Kreischer and then-CFO Ludy in reviewing the PERS eligibility of Ventnor-affiliated professionals; a certification by Russo as to the preparation of the August 2014 memorandum; a certification by Callaghan that the Russo Memorandum was an official City record prepared to confirm Mosca's employment status and PERS eligibility, and that no contracts were drafted or tendered to Mosca. Mayor Bagnell also certified that the clerk included Mosca in error "as part of the annual bulk resolutions . . . [which were] passed . . . as a part of general business, where many items on the agenda were passed simultaneously without further consideration or discussion."

In support of its motion, the Board relied on the resolutions and publications as conclusively establishing Mosca's service under an LPCL professional services contract. It characterized Mosca's allegation that the

resolutions were passed in error to be "post hoc and self-serving statements that are 'factually inaccurate,' as each resolution was passed and was specific to Mosca's annual appointment," and that the assertions of error "cannot create an issue of material fact and certainly does not entitle Mosca to summary decision."

Based on the parties' submissions, an administrative law judge (ALJ) rendered his initial decision on November 3, 2021. The ALJ described the proffered evidence as follows:

> [T]he Board's documentary evidence of legally adopted municipal resolutions that purport to memorialize and enact a certain legal arrangement between a vendor, . . . Mosca, and . . . Ventnor is met with evidence from witnesses who claim that that evidence cannot be relied upon to prove the existence of . . . Mosca's status as a vendor or as an independent contractor operating under a LPCL-authorized no-bid contract rather than as an employee.

He continued that Mosca had also presented his own certification. Given the witness certifications, the lack of requests for proposals ("RFPs") or other written contract documents, and the lack of evidence of any understanding between Mosca and Ventnor officials that he was anything other than an employee, the ALJ concluded Mosca did not provide his services under the LPCL, the resolutions were adopted in error, and Mosca was therefore eligible for PERS enrollment for the years in question. The Board filed exceptions to

the initial decision, requesting the final determination reject in part, adopt in part, and modify the ALJ's factual findings, and reject the ALJ's legal conclusion as to Mosca's PERS eligibility.

The Board issued its final decision on January 20, 2022. It found that each year from 2008 to 2015, Mosca was appointed as municipal prosecutor under the "no[-]bid" professional services language of the LPCL; therefore, the language of the resolutions and notices reflected that Mosca's appointment as municipal prosecutor was for professional services. The Board noted if Mosca was a general hire, there would be no need for his hiring to be published in the newspaper, and no need for him to be rehired every year. It also rejected the ALJ's reliance on certifications by the Ventnor mayors, which were prepared years after the resolutions were passed, and instead found the resolutions' plain language controlled. The Board noted that just because no written contract was produced did not mean there was no contractual agreement.

The Board also rejected the ALJ's attempt to minimize the language in the appointing resolutions because it "ignores well-established legal precedent." Instead, it found that the 2008 to 2015 resolutions constituted binding professional services contracts because "a municipal resolution itself can constitute a binding agreement for professional services." Therefore, the Board

found the plain language of the resolutions lawfully enacted between 2008 and 2015 conclusively established Mosca was working under a professional services agreement in violation of N.J.S.A. 43:15A-7.2(a). The Board further added Mosca "maintained his own private law practice, while purportedly an employee of Ventnor, with regular business hours of 9:00 a.m. to 5:00 p.m." Finally, the Board concluded that in applying Chapter 92 to these modified factual findings, Mosca was ineligible for PERS enrollment.

On appeal, Mosca argues: 1) the Board impermissibly modified the ALJ's findings of fact in rendering its final decision; 2) he was a regular employee of the municipality, not a professional services vendor or independent contractor, and is therefore eligible for PERS enrollment; and 3) in the alternative, his PERS membership should be reinstated under the doctrine of equitable estoppel.

## II.

### A.

The Legislature adopted a publicly funded pension system for State employees and qualifying municipal employees in order to provide "deferred compensation for services rendered." Uricoli v. Bd. of Trs., 91 N.J. 62, 71 (1982). The Legislature hoped to "encourag[e] qualified individuals to enter and remain in public service." Ibid. (quoting Masse v. Bd. of Trs., 87 N.J. 252,

261 (1981)). However, due to decreases in State revenue and other policy considerations, lawmakers enacted the Chapter 92 reforms, which became effective January 1, 2008.

Among other things, Chapter 92 changed pension eligibility rules to exclude individuals who worked under a professional services contract and independent contractors. N.J.S.A. 43:15A-7.2. Local Finance Notices ("LFN") provided guidance to local employers on the implementation of the new law. LFN 2007-28 directed local employers' Pension Certifying Officers to apply the twenty-factor test and to "document that all professionals serving as employees are not contractors." Specifically, the LFN provided:

> A professional who is an employee must be a bona fide employee that meets the Internal Revenue Service "employee test" in order to be a member of PERS for those services.
>     . . . .
>
> An employee is someone who is paid a salary or hourly compensation that is subject to payroll deductions, particularly social security, and federal and state income withholding taxes.
>     . . . .
>
> Conversely, if the position is determined to be that of an employee and there is a professional service contract under which the employee provides services, employment may continue, but the individual cannot be a member of . . . PERS . . . .

[N.J. Dep't of Cmty. Affairs, <u>Local Finance Notice 2007-28 7-8</u> (Dec. 29, 2007).]

"Professional services" are defined as:

services rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law, and the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training.

[N.J.S.A. 40A:11-2.]

To award professional services contracts and avoid the public bidding requirement,

[t]he governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract and shall forthwith cause to be printed once, in the official newspaper, a brief notice stating the nature, duration, service and amount of the contract, and that the resolution and contract are on file and available for public inspection in the office of the clerk of the county or municipality, or, in the case of a contracting unit created by more than one county or municipality, of the counties or municipalities creating the contracting unit . . . .

[N.J.S.A. 40A:11-5(1)(a)(i).]

The LPCL defines a contract as:

any agreement, including but not limited to a purchase order or a formal agreement, which is a legally binding

12

relationship enforceable by law, between a vendor who agrees to provide or perform goods or services and a contracting unit which agrees to compensate a vendor, as defined by and subject to the terms and conditions of the agreement. A contract also may include an arrangement whereby a vendor compensates a contracting unit for the vendor's right to perform a service, such as, but not limited to, operating a concession.

[N.J.S.A. 40A:11-2(3)(21).]

B.

"[A]n appellate court reviews agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). See Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

Decisions "made by an administrative agency entrusted to apply and enforce a statutory scheme" are reviewed "under an enhanced deferential standard." East Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J.

477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015)). This court also "afford[s] substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). "Such deference has been specifically extended to state agencies that administer pension statutes[,]" because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). Thus, a party who challenges the validity of the Board's administrative decision bears a "heavy burden of . . . demonstrating that the decision was arbitrary, unreasonable or capricious." In re Tax Credit Application of Pennrose Props. Inc., 346 N.J. Super. 479, 486 (App. Div. 2002); accord Russo, 206 N.J. at 27.

A reviewing court is not, however, bound by an agency's interpretation of a statute or its determination of a strictly legal issue outside its charge. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 158 (2018); Dep't of Child. & Fam. v. T.B., 207 N.J. 294, 302 (2011). See Greenwood v. State

Police Training Ctr., 127 N.J. 500, 513 (1992) (agencies have no superior ability to resolve purely legal questions, and a court is not bound by an agency's determination of a legal issue).

The judicial role in reviewing an administrative action is generally limited to three inquires:

> (1)    whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2)    whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3)    whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. at 194).]

When determining whether a person is eligible for pension benefits, courts should carefully interpret the applicable guidelines "so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007) (alteration in original)

(quoting <u>Chaleff v. Bd. of Trs.</u>, 188 N.J. Super. 194, 213 (App. Div. 1983)); <u>see also</u> <u>Francois v. Bd. of Trs.</u>, 415 N.J. Super. 335, 350 (App. Div. 2010).

III.

The facts demonstrate Mosca's appointment as municipal prosecutor met the definition of a "professional services contract" under the LPCL. There is no dispute that Ventnor did not hold public bidding for the municipal prosecutor position. Additionally, the governing body appointed Mosca each year by resolution, specifically stating that his contracts were each awarded under N.J.S.A. 40A:5-11 and were documented by publishing in the Atlantic City Press.

Mosca's argument that the absence of a written "professional services contract" defeats application of N.J.S.A. 43:15A-7.2(a) is unavailing. The absence of a writing does not defeat the professional engagement from qualifying as an enforceable professional services agreement as used in Chapter 92. <u>Cf.</u> <u>Kress v. La Villa</u>, 335 N.J. Super. 400, 409-11 (App. Div. 2000) (enforcing agreement under theory of "quasi-contract" to prevent unjust enrichment where the requirements of N.J.S.A. 40A:11-5 were not met). The resolution appointing him as municipal prosecutor is a writing sufficient to constitute a contract under the LPCL, N.J.S.A. 40A:11-2(3)(21), and therefore,

16

the Board did not err in concluding the "resolution itself constitute[d] a binding agreement between the parties specifying the term and salary of the position."

This legal work under a professional services agreement is undoubtedly the exact type of position the Legislature intended to exclude from PERS in enacting the Chapter 92 reforms. N.J.S.A. 40A:11-2(6). Each resolution passed was specific to Mosca's annual reappointment, and titled appropriately, specifically naming Mosca as the individual awarded the professional services no-bid contract. Allowing a professional service provider who is awarded a professional service contract and openly provides professional services to the public to be considered a PERS-eligible employee is inconsistent with the express intent behind the Legislature's Chapter 92 reforms.

The Board did not impermissibly modify the ALJ's findings of fact in rendering its final decision. Based on the plain language of these resolutions, the Board was within its discretion to reject the ALJ's findings, especially since these findings were not based on the ALJ's firsthand assessment of credibility, but instead on interpretation of a statute, which the agency is responsible for enforcing. Richardson, 192 N.J. at 196. Given the deference owed to the Board, the language of the governing statute, and Ventnor's resolutions, Mosca was not an employee entitled to service credit.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1672-21